**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

CHRISTOPHER EUGENE PEGUES,     )
                                )
                Petitioner,    )
                                )
              v.             )         1:19CV610
                                )
ERIC A. HOOKS, Secretary,    )
North Carolina Department of   )
Public Safety,              )
                                )
                Respondent.   )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 1.) Respondent has moved for summary judgment. (Docket Entries 4, 5.) For the reasons that follow, the Court should grant Respondent's Motion for Summary Judgment.

### I.  Background

On August 9 and 10, 2016, a jury in the Superior Court of Guilford County found Petitioner guilty of possession of a firearm by a convicted felon in case 15 CRS 76505, and of attaining habitual felon status in case 15 CRS 23221, respectively. (See Docket Entry 1, ¶¶ 1, 2, 4-6; see also Docket Entry 5-3 at 46, 74; Docket Entry 5-7 at 287-89, 391-94.)[1] The trial court sentenced Petitioner to 80 to 108 months in prison. (See Docket Entry 1, ¶ 3; see also Docket Entry 5-3 at 77-78; Docket Entry 5-7 at 395-401).

---

[1] Throughout this Recommendation, pin citations refer to the page numbers in the footer appended to those materials at the time of their docketing in the CM/ECF system.

Petitioner appealed to the North Carolina Court of Appeals, (see Docket Entry 1, ¶¶ 8, 9; see also Docket Entry 5-3 at 81-83; Docket Entry 5-7 at 403), which found no error, State v. Peques, No. COA17-70, 812 S.E.2d 912 (table), 2018 WL 2016281 (N.C. App. May 1, 2018) (unpublished). Petitioner did not thereafter file a petition for discretionary review in the North Carolina Supreme Court. (See Docket Entry 1, ¶ 9(g).)

Petitioner subsequently filed a pro se MAR with the trial court (Docket Entry 1 at 40-56; Docket Entry 5-6), which that court summarily denied (Docket Entry 1 at 36-39). Petitioner then filed a Petition for a Writ of Certiorari with the North Carolina Court of Appeals seeking review of his MAR's denial (id. at 23-56), which that court denied (id. at 22).

Petitioner next instituted this action via his Petition. (Docket Entry 1.) Thereafter, Respondent filed the instant Motion and Supporting Brief (Docket Entries 4, 5), and Petitioner responded in opposition (Docket Entry 7).

## II. Facts

On direct appeal, the North Carolina Court of Appeals summarized the trial evidence as follows:

> On [May 28,] 2015, while [Petitioner] was on probation, law enforcement officers went to search [Petitioner]'s home. When officers arrived, [Petitioner] asked if he could secure his dogs before they entered; the officers agreed and [Petitioner] closed the door to his home. The officers then heard a window opening and a "clink, metal-on-metal" sound. When [Petitioner] returned to the door, he had forgotten to secure his dogs. Thereafter[,] officers found two guns on the ground outside [Petitioner]'s residence by his bedroom window; one gun was on [Petitioner]'s property and the other was just beyond a fence on the neighbor's property but still "just

outside" [Petitioner]'s bedroom window. [Petitioner] was the only person in the area, and his neighbor's house appeared to be entirely vacant.

Peques, 2018 WL 2016281, at *1.

### III.  Grounds for Relief

The Petition raises nine grounds for habeas relief:

1) Petitioner's "[c]onviction was obtained in violation of Due Process of Law" (Docket Entry 1, ¶ 12 (Ground One)), because "[the trial court] threatened [Petitioner], . . . made unfair and improper remarks about [Petitioner], . . . denied substitute counsel, . . . [and] did not make sufficient inquiry into [Petitioner's] suicide attempt" (id., ¶ 12(Ground One)(a));

2) Petitioner possesses "[n]ew evidence" (id., ¶ 12 (Ground Two)) consisting of "[a]ffidavits from two witnesses stating that [Petitioner] did not live at [the] residence [where officers found the guns], the guns were not [Petitioner's], and that [the] guns may have belonged to someone next door," as well as a "[n]ewspaper article reporting on the houses in the neighborhood" (id., ¶ 12(Ground Two)(a));

3) Petitioner's "[c]onviction [was] obtained by use of [a] coerced or illegally obtained confession" (id., ¶ 12(Ground Three)) because, "[a]t trial[, Petitioner's trial counsel] opened the door to suppressed alleged statements [by Petitioner] which led to the prosecutor addressing [the] statements over objection" (id., ¶ 12(Ground Three)(a));

4) "[u]nconstitutional search and seizure" (id., ¶ 12(Ground Four)), in that "[p]robation officers and High Point Police

searched the residence [where they found the guns] without a warrant[ and Petitioner] did not live at the residence" (id., ¶ 12(Ground Four)(a));

5) Petitioner's "[c]onviction [was] obtained by the use of evidence obtained pursuant to an unlawful arrest," because "[o]fficers placed [Petitioner] in handcuffs without any provocation from [him]" (id. at 12);

6) Petitioner's "[c]onviction [was] obtained by a violation of the privilege against self-incrimination," because "[o]fficers claim[ed] that [Petitioner] admitted to guilt prior to being given Miranda warnings[ and the a]lleged statements were introduced at trial despite a motion to suppress [the] statements" (id. at 13);

7) Petitioner's "[c]onviction [was] obtained by action of the trial jury . . . which was unconstitutionally selected, impaneled, and constituted," because "[a j]uror . . . admitted to being friends with the Assistant Chief of Police and that she m[ight have been] subconsciously bias[ed]" (id. at 14);

8) Petitioner's "[c]onviction [was] obtained by denial of [his] right to present evidence in his own defense" because, "[o]n March 3[], 2016[,] and again on August 8[], 2016[, he] made it clear to the [trial] court that [his trial counsel] did not know the details of [Petitioner's] case, but the [trial] court forced [Petitioner] to proceed without evidence or witnesses" (id. at 15); and

9) Petitioner's "[c]onviction [was] obtained due to the ineffectiveness of [his] trial [] counsel," in that trial "counsel

did not present [an] arresting officer's contradictory statements, did not present evidence, misstated facts, did not present witnesses, opened the door to suppressed statements, did not dispute ownership of [the home where officers found the guns], did not address probation's right to search, used profanity towards [Petitioner], expelled [Petitioner] from trial counsel's office, violated lawyer/client confidentiality, did not investigate, did not present mitigating factors, did not question [the] credibility of [the] state's witnesses, was unable to answer simple questions, did not object to proceeding after [Petitioner's] suicide attempt, did not give advice whether or not to testify, [and] did not strike [a] bias[ed] juror" (id. at 16).

## IV. Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to

have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").[2]

Alternatively, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

---

[2] The Court may deny a claim on the merits despite a lack of exhaustion. See 28 U.S.C. § 2254(b)(2).

## V.  Discussion

**A.   Ground One**

In Ground One, Petitioner contends that his "[c]onviction was obtained in violation of Due Process of Law" (Docket Entry 1, ¶ 12 (Ground One)), because "[the trial court] threatened [Petitioner], . . . made unfair and improper remarks about [Petitioner], . . . denied substitute counsel, . . . [and] did not make sufficient inquiry into [Petitioner's] suicide attempt" (id., ¶ 12(Ground One)(a)); see also Docket Entry 7 at 2-6).  Those contentions fall short.

1.   Threats and Unfair/Improper Remarks ("Subcontention 1(a)")

Petitioner first asserts "that[,] at [his] pre-trial hearing on [March 3,] 2016[,] regarding [his] rejection of a plea bargain[, the trial court] made strong, descriptive comments to [Petitioner] in order to impress upon [him] the seriousness of [his] situation." (Docket Entry 7 at 2.)  According to Petitioner, "[b]y [the trial court] making threatening and unfair remarks towards [Petitioner], [it] reaffirmed [Petitioner's] fears and distrust of the [c]ourts and prison" and, "had [the trial court] not made such threatening and unfair remarks about [Petitioner][, he] would have accepted the plea bargain."  (Id.)  Petitioner also observes that "[a] prosecutor may not express personal opinions about the defendant's guilt or credibility, and must avoid epithets or other remarks regarding the defendant's character."  (Id. (citing United States v. Auch, 187 F.3d 125, 131 (1st Cir. 1999), United States v.

Certified Envtl. Servs., Inc., 753 F.3d 72, 94-95 (2d Cir. 2014),

and Hall v. United States, 419 F.2d 582, 587-88 (5th Cir. 1969)).)

At the pre-trial hearing, the state advised the trial court

that it made Petitioner a plea offer "to plead to the underlying

active firearm by felon and take . . . 15 to 27 months active and

[the state would] dismiss the other drug charge and the habitual

felon charge," as well as that Petitioner "ha[d] chosen not to

accept that plea." (Docket Entry 5-7 at 4.) After receiving a

forecast of the state's evidence, the trial court addressed

Petitioner as follows:

> [TRIAL COURT]: [N]ow, young man, you're a Prior Record
> Level IV habitual felon. . . . [T]here's going to be
> evidence you were on probation and the probation officer
> is going to describe what they do when you're on
> probation. And one of those conditions is that you have
> to submit yourself to searches while you're on probation.
>
> . . .
>
> I don't think [the jury is] going to believe [your] dogs
> threw the guns out the window. And if you were the only
> one in the house –– stop shaking your head. . . . I'm
> trying to get through your thick skull, it seems as if
> you have one, you're a habitual felon because you have
> . . . three prior felony convictions on your record.
> Now, listen. . . . [T]here are going to be people
> sitting over here in this box, a jury box. They're not
> going to be persons that have criminal convictions on
> their record. They're going to hear officers of the
> court take the witness stand and testify that they went
> to your house and that you were the only one in the house
> and weapons were thrown out the window. Now, if that's
> not the case[,] for it to come into evidence that
> somebody else threw the weapons out, you're going to have
> to call somebody else to testify on your behalf. Because
> if you testify, the [district attorney] is going to
> cross-examine you about your prior criminal convictions.
> And you have at least three felony convictions. And so
> the jurors are going to hear that you have a bad record.
> And although they're instructed not to convict you on
> this offense for something you've done in the past, what

do you think they're going to do when they hear you got
a prior record?

. . .

[S]ometimes it's not whether or not you did it or not.
It's whether or not you will be acquitted of doing it.
And the evidence seems to be stacked pretty high against
you.  And you don't have to plead guilty.  You can go to
trial if you want to, but you need to understand if you
plead guilty, you'll be out of jail in 15 months.  If you
don't plead guilty -- the evidence seems pretty strong,
like you probably will be convicted -- you're looking at
going to jail for seven or more years.  Now, that's 88
months at the bottom of the presumptive range.  A judge
could be nice and sentence you at the bottom of the
mitigated range.   That would be five years and six
months.  But the [district attorney,] . . . since you're
playing difficult with him, he's going to put the case
before a judge that's more likely to give you a tougher
sentence than one who will give you a[n] easier sentence.
So, you're probably . . . looking as much as 110 months
in jail. . . .  [T]hat's nine years in jail versus a year
and three months in jail.  Nine years in jail.   And
you're young.  You're handsome.  You look kind of pretty.
And you're going to the Department of Corrections where
there's going to be some guys who will take pleasure in
taking advantage of younger boys in jail. . . .  I'm just
trying to be real with you . . . .   I want you to
understand what you're looking at.   Now, you need to
think about that, young man.  Your attorney's tried to
tell you.  He doesn't have to say anything out loud, but
. . . I'm sure he's told you to take advantage of this
plea offer.  It's a good plea offer.  Are you sure you
want to reject this plea today?

[PETITIONER]: (Nodding head.)

[TRIAL COURT]: Yes or no?

[PETITIONER]: Yes, sir.

. . .

[TRIAL COURT]: [Y]ou need to think about this, young man,
real hard whether you want to subject yourself to going
to jail for nine years.  What are you, twenty-what?

[PETITIONER]: Twenty-six.

[TRIAL COURT]: Twenty-six.  You're not going to be the
same person after nine years in that kind of lifestyle

being in the Department of Corrections. Now, you go to jail for a year and a half, I'll put in the judgment that you be sentenced as a youthful offender and go to a place where you're going to be around persons closer to your own age. If you're put in the regular prison population, you're going to be around people 10 to 20 years older than you. You know, they're going to be in jail for the rest of their life and they don't have much value on anyone else's life. That's what prison is. Prison is not a cake walk. And you're not going to a federal prison. You're going to a state prison. All right. That's all.

(Id. at 4-12.)

Subcontention 1(a) faces a procedural bar. As Respondent argues, "Petitioner could have raised Subcontention 1(a) on direct appeal but did not do so." (Docket Entry 5 at 5; see also Docket Entry 5-4 (Petitioner's appellate brief lacking any argument regarding trial court's threats and/or unfair, improper remarks).) Thus, "North Carolina's mandatory post-conviction procedural bar statute" bars Subcontention 1(a). (Docket Entry 5 at 5 (citing, inter alia, N.C. Gen. Stat. § 15A-1419(a)(3), (b) (claim procedurally barred where, "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue . . . but did not do so," absent proof of "[g]ood cause" and "actual prejudice" or "a fundamental miscarriage of justice"), and Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) (noting that Fourth Circuit "ha[d] consistently held that [N.C. Gen. Stat.] § 15A-1419(a)(3) is an independent and adequate state ground for purposes of procedural default" (citing McCarver v. Lee, 221 F.3d 583, 589 (4th Cir. 2000), and Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998)))).)

In response, Petitioner argues neither that "good cause" and "actual prejudice" exist under Section 15A-1419(b)(1), nor that "failure to consider [his] claim will result in a fundamental miscarriage of justice" under Section 15A-1419(b)(2). (See Docket Entry 7 at 3.) Rather, Petitioner maintains that, "on pages [two through five] of [his] appella[te] brief it clearly raises the issue [of Subcontention 1(a)]." (Id. (referencing Docket Entry 5-4 at 7-10, and citing Fortini v. Murphy, 257 F.3d 39, 45 (1st Cir. 2001), for proposition that "exhaustion requirement satisfied because appellate brief's language and citations should have alerted court of due process argument").) However, Petitioner's appellate counsel merely quoted portions of the trial court's remarks on March 3, 2016, in the "Statement of Facts" portion of Petitioner's appellate brief (Docket Entry 5-4 at 7-9 (capitalization, bold font, and underscoring omitted)), and made no argument that those remarks violated Petitioner's due process rights (see id. at 26-42). Correspondingly, the North Carolina Court of Appeals did not address any argument that the trial court's remarks violated Petitioner's due process rights in its decision affirming Petitioner's convictions and sentence, see Peques, 2018 WL 2016281, at *1-4.

Furthermore, even if Petitioner could demonstrate cause and prejudice and/or a fundamental miscarriage of justice sufficient to excuse his procedural default, Subcontention 1(a) still fails as

meritless.[3]  As an initial matter, Petitioner has offered <u>nothing</u> beyond his own bald assertion that, but for the trial court's allegedly improper remarks, he would have accepted the plea.  (<u>See</u> Docket Entry 7 at 2 ("But had [the trial court] not made such threatening and unfair remarks about me[,] I would have accepted the plea bargain.  Prior to [the trial court] making those remarks, I was considering accepting the plea bargain."); <u>see also</u> Docket Entry 1 at 28 (assertion in Petition for a Writ of Certiorari that, "[h]ad [Petitioner] not been threatened and intimidated by the [p]rosecutor, he may have taken the plea bargain resulting in a far lesser sentence").)  Moreover, the record strongly indicates the opposite, i.e., that the trial court held the hearing on March 3, 2016, for the sole purpose of placing on the record Petitioner's <u>previous</u> rejection of the state's plea offer.  (<u>See</u> Docket Entry 5-7 at 4 (reflecting prosecutor's report to trial court at <u>outset</u> of hearing that Petitioner "ha[d] chosen not to accept th[e] plea").)

In other words, <u>prior</u> to the hearing and the trial court's allegedly improper remarks, Petitioner had <u>already rejected</u> the

_____

[3] Petitioner raised the substance of Subcontention 1(a) in his MAR (<u>see</u> Docket Entry 5-6 at 2, 10) and, although the MAR court did not expressly discuss that claim in its Order denying relief (<u>see</u> Docket Entry 1 at 36-39), a rebuttable presumption exists that the MAR court did deny Petitioner's parallel claim to Subcontention 1(a) on its merits, <u>see</u> <u>Johnson v. Williams</u>, 568 U.S. 289, 298 (2013) (observing that "it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference"); <u>see also</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011) (holding that deferential standard of review under 28 U.S.C. § 2254(d) and (e) applies to even summary and unexplained state court decisions); <u>Harris v. Reed</u>, 489 U.S. 255, 265 (1989) (finding presumption of merits determination where state court decision's grounds for denial unclear).  Petitioner has not offered evidence to overcome that presumption.  (<u>See</u> Docket Entries 1, 7.)  Thus, for the reasons explained below, the MAR court's determination did not contravene or unreasonably apply clearly established United States Supreme Court law and Subcontention 1(a) also fails under Section 2254(d).

state's plea offer.  Under these circumstances, Subcontention 1(a) fails as conclusory and unsupported.  See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (holding that, "[i]n order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit," and that "[u]nsupported, conclusory allegations do not entitle a habeas petition to an evidentiary hearing"), abrogated on other grounds, Gray v. Netherland, 518 U.S. 152, 165-66 (1996).[4]

In short, Subcontention 1(a) fails as procedurally barred and on the merits.

2.  <u>Denial of Petitioner's Request for Substitute Counsel ("Subcontention 1(b)")</u>

Petitioner maintains that his "[c]onviction was obtained in violation of Due Process of Law" (Docket Entry 1, ¶ 12 (Ground One)), because the trial court on two occasions denied Petitioner's request for "substitute counsel" (id., ¶ 12(Ground One)(a)); see also Docket Entry 7 at 3-5).  According to Petitioner, "the record clearly shows that (1) [he] requested substitute counsel several times in a timely manner that would not have impacted the [trial] court's proceedings, (2) the [trial] court did not adequately inquire into [his] complaints about counsel, and (3) the extent of the conflict between [him] and [his] counsel was . . . so severe that even the opposing counsel was aware of the strained

_____

[4] The cases cited by Petitioner do not aid his cause, as those cases all involve improper remarks made by <u>prosecutors</u> about defendants in front of a <u>jury</u> that the courts found prejudiced the defendants in the eyes of the jury.  <u>See</u> <u>Auch</u>, 187 F.3d at 131; <u>Certified Envtl. Servs.</u>, 753 F.3d at 94-95; <u>Hall</u>, 419 F.2d at 587-88.  By contrast, in this case, Petitioner challenges the <u>trial court's</u> remarks made during a <u>pre-trial hearing without a jury</u> and without any corresponding risk of prejudice.

relationship." (Docket Entry 7 at 3-4; see also id. at 4-5 ("There was substantial evidence of irreconcilable conflicts between [Petitioner] and [trial] counsel.").)

As an initial matter, Petitioner's failure to file a timely notice of appeal or a petition for discretionary review ("PDR") in the North Carolina Supreme Court seeking review of the North Carolina Court of Appeals' decision affirming his convictions and sentence results in a procedural bar of Subcontention 1(b). See O'Sullivan, 526 U.S. at 847 ("requiring state prisoners to file [PDRs with the state's highest court] when that review is part of the ordinary appellate review procedure in the [s]tate" in order to exhaust post-conviction claims). Petitioner admits that he "did not file a timely notice of appeal or [PDR] [in] the North Carolina Supreme Court seeking review of the [North Carolina Court of Appeals' decision]." (Docket Entry 7 at 4.) However, he contends that, "at the time[, he] did not have legal materials and [his] appellate counsel did not explain to [him] the significance of filing a PDR." (Id.) Petitioner additionally "request[s] that the Court allow [him] to present the [substance of Subcontention 1(b)] to the North Carolina Supreme Court in order to exhaust claims." (Id.)

To the extent Petitioner's statement that his "appellate counsel did not explain to [him] the significance of filing a PDR" (id.) constitutes an attempt to raise a claim of ineffective assistance of appellate counsel, such a claim could not establish cause to excuse his procedural default, because Petitioner did not

14

possess a constitutional right to counsel beyond his first direct appeal to the North Carolina Court of Appeals, see Coleman v. Thompson, 501 U.S. 722, 755-56 (1991); Wainright v. Torna, 455 U.S. 586, 587-88 (1982); Ross v. Moffitt, 417 U.S. 600, 616 (1974). Furthermore, any such claim of ineffective assistance of appellate counsel would itself face a procedural bar, as Petitioner failed to raise such a claim in his MAR. (See Docket Entry 5-6.)[5] Moreover, the Court should decline Petitioner's request that the Court permit him to now raise Subcontention 1(b) with the North Carolina Supreme Court as futile, as any such claim would face a mandatory state procedural bar, see N.C. Gen. Stat. § 15A-1419(a)(3).

Even if Petitioner could demonstrate either cause and prejudice or a fundamental miscarriage of justice sufficient to excuse his default, Subcontention 1(b) would fail under the deferential standard of review in 28 U.S.C. § 2254(d) and (e). Petitioner raised the substance of Subcontention 1(b) on direct appeal (see Docket Entry 5-4 at 26-31), and the North Carolina Court of Appeals rejected that assignment of error as follows:

---

[5] In Martinez v. Ryan, 566 U.S. 1 (2012), and Trevino v. Thaler, 569 U.S. 413 (2013), the United States Supreme Court recognized a narrow, equitable exception to the rule in Coleman: where state law precludes a prisoner from raising (or the state's procedural framework likely prevents a meaningful opportunity to raise) ineffective assistance of trial counsel claims on direct appeal, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if" that default arises from the ineffective assistance of counsel (or lack of counsel) in an initial-review collateral proceeding, Martinez, 566 U.S. at 17; see also Trevino, 569 U.S. at 423-29. The Supreme Court has now made clear that the Martinez-Trevino exception does not extend to excuse procedurally defaulted claims of ineffective assistance of appellate counsel, Davila v. David, ___ U.S. ___, ___ - ___, 137 S. Ct. 2058, 2065-70 (2017).

[Petitioner] directs th[e] [c]ourt to times he "raised the issue of wanting new counsel" with the trial court due to "irreconcilable conflicts and a complete breakdown in communication[.]" (Original in all caps.) [Petitioner]'s problems with his counsel occurred before and during his trial, but the substance of [Petitioner]'s complaints was essentially the same during each of his many exchanges with the trial court. [Petitioner]'s complaints were all similar to two which we will describe. First, at a [March 3,] 2016[,] hearing for [Petitioner] to reject his plea, [he] said he did not believe his attorney was representing him to the best of his ability and his attorney would not provide him with information about the case. After speaking with [Petitioner], the trial court then explained,

> You were on probation. They did a normal search that they do when people are on probation. They came over to your house and they found guns at your house. That's the evidence against you. He can't tell you anymore that's going on. That's what the evidence is in the case.
>
> What do you think -- what is he supposed to be doing?
>
> What is he not doing that you think -- you think he's going to be able to go and talk to those probation officers and tell them to change their statement?
>
> They're not going to do that.
>
> What do you think is going to happen?

[Petitioner] raised no further issues at the hearing on that day.

Second, on the day of [Petitioner]'s trial, before the trial began[, Petitioner] again expressed dissatisfaction with his attorney noting he was not representing him "to the best of his ability" because he was not familiar enough with the case. The trial court then took a recess for [Petitioner] and his counsel to "see if [they could] work out any differences[.]" After the recess[,] [Petitioner] again expressed discontent, but then stated, "I'm willing to proceed, Your Honor." The trial court then asked [Petitioner] directly, "Okay. So, you resolved your conflict with your attorney and you're ready to proceed?" to which [Petitioner] responded, "Yes,

<u>sir.</u>"  [Petitioner] then expressed that he would like a
new attorney, to which the trial court responded,

> Then the court finds, to the extent there is a
> motion to fire his attorney at this point, I
> find it to be meritless.  He -- any question
> he's had the court has answered easily within
> just a few seconds.  He understands he now can
> work with his attorney simply because -- the
> court knows [Petitioner]'s entitled to be
> represented by an attorney, but it's not an
> attorney of his choice.  There has been
> nothing that has been brought forward that
> would rise to the level of some type of
> conflict that would require [Petitioner's
> trial counsel] to be removed.
>
> In fact, <u>the court finds [Petitioner] just
> told the court that he can work with his
> attorney and [Petitioner's trial counsel] said
> the same thing of [Petitioner]</u>.
>
> So, to the extent [Petitioner] is now saying
> he's not withdrawing his motion, I find it to
> be meritless.  It is denied at this point.  It
> is only delaying the trial.

We conclude that the trial court properly satisfied
"itself . . . that present counsel is able to render
competent assistance and that the nature or degree of the
conflict is not such as to render that assistance
ineffective." [<u>State v. Thacker</u>, 301 N.C. 348, 353
(1980).]  We discern no abuse of discretion.  This
argument is overruled.

<u>Peques</u>, 2018 WL 2016281, at *1-2 (emphasis added).[6]

---

[6] Petitioner also raised the substance of Subcontention 1(b) in his MAR
(<u>see</u> Docket Entry 5-6 at 2, 10), and the MAR court discussed that claim as
follows:

> Despite an expression of dissatisfaction with his attorney at trial,
> <u>after a recess [Petitioner] admitted that he had "resolved [his]
> conflict with [his] attorney</u>."  The trial court then found that
> "counsel is able to render competent assistance and that the nature
> and degree of the conflict is not such as to render that assistance
> ineffective" and the [North Carolina] Court of Appeals upheld this
> determination.

(Docket Entry 1 at 38 (emphasis added)).  Although the MAR court did not
expressly state its grounds for denying that claim (<u>id.</u>), a rebuttable
presumption exists that the MAR court denied the claim on its merits, <u>see Johnson</u>
(continued...)

In so holding, the North Carolina Court of Appeals did not contradict or unreasonably apply clearly established federal law as determined by the Supreme Court of the United States, because "[t]he United States Supreme Court has not addressed the issue of when a denial of a motion to substitute counsel constitutes a violation of the right to counsel of choice[ and thus t]here is no binding Supreme Court constitutional precedent that the state courts must follow."  Wilson v. Weisner, No. 1:05CV161, 2005 WL 2253825, at *9 (M.D.N.C. Sept. 16, 2005) (unpublished) (Sharp, M.J.); see also Peterson v. Smith, 510 F. App'x 356, 366-67 (6th Cir. 2013) (holding that failure of trial court to make sufficient inquiry into the defendant's request for substitute counsel "could not be the basis for relief under [28 U.S.C. § 2254(d)] because such inquiry is not required by clearly established [United States] Supreme Court precedent"); Plumlee v. Masto, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc) (recognizing that "no Supreme Court case . . . stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust" (citing Morris v. Slappy, 461 U.S. 1, 13-14 (1983) ("reject[ing] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel"))); Smith v. Bonner, 104 F. Supp. 3d 1252, 1271

      6(...continued)
v. Williams, 568 U.S. 289, 298 (2013); Harrington v. Richter, 562 U.S. 86, 99 (2011); Harris v. Reed, 489 U.S. 255, 265 (1989).  Petitioner has not offered evidence to overcome that presumption. (See Docket Entries 1, 7.)  Nor (for the same reasons discussed above) has Petitioner shown that the MAR court's denial contravened or unreasonably applied United States Supreme Court precedent.

(D. Colo. 2015) (noting that, "[t]o date, the [United States] Supreme Court has not articulated a standard for deciding a Sixth Amendment claim based on a habeas petitioner's allegation the trial court denied his request for substitute counsel" (citing Peterson)).[7]

Furthermore, "Petitioner has done nothing to show that, factually, the [trial] court['s] findings [that 'nothing [ ] ha[d] been brought forward that would rise to the level of some type of conflict that would require [Petitioner's trial counsel] to be removed[, that] . . . [Petitioner had] just told the court that he c[ould] work with his attorney and [Petitioner's trial counsel] said the same thing of [Petitioner, and that he] . . . [wa]s only delaying the trial' (Docket Entry 5-7 at 34)] were incorrect. These findings are presumed correct on [federal] habeas review." Wilson, 2005 WL 2253825, at *9 (citing 28 U.S.C. § 2254(e)(1)).

---

[7] The United States Supreme Court has held that the Sixth Amendment provides a criminal defendant with the right to "the counsel he believes to be best," United States v. Gonzales-Lopez, 548 U.S. 140, 146 (2006). However, Gonzales-Lopez does not constitute clearly established United States Supreme Court precedent for purposes of this case for two reasons. First, Gonzales-Lopez addresses "the right of a defendant who does not require appointed counsel to choose who will represent him." Id. at 144 (emphasis added) (citing Wheat v. U.S., 486 U.S. 153, 159 (1988)). Here, due to petitioner's indigency, the trial court appointed counsel for Petitioner (see Docket Entry 5-3 at 7-9) and, even in seeking substitution of counsel, Petitioner merely asked for a new, unspecified appointed counsel (see Docket Entry 5-7 at 25, 33). Second, Gonzales-Lopez's particularized facts involved the government's concession that a federal district court improperly disqualified (and refused to grant substitution in favor of) the defendant's previously retained counsel. Id. at 142-43, 148. In light of the government's concession, the court did not evaluate the correctness of the district court's denial of the defendant's motion to substitute counsel and, thus, did not provide a test or standard against which to assess the trial court's denial of Petitioner's motion to substitute counsel here. Id. at 148. The Supreme Court ultimately held that, "[w]here the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry," id. (emphasis added), because such denial "unquestionably qualifies as structural error," id. at 150.

19

In sum, Subcontention 1(b) remains procedurally defaulted and also falls short under Sections 2254(d) and (e)(1).

3.  Insufficient Inquiry into Petitioner's Capacity to Stand Trial ("Subcontention 1(c)")

Petitioner next argues that his "[c]onviction was obtained in violation of Due Process of Law" (Docket Entry 1, ¶ 12 (Ground One)), because the trial court "did not make sufficient inquiry into [Petitioner's] suicide attempt" (id., ¶ 12(Ground One)(a)); see also Docket Entry 7 at 5-6).  More specifically, Petitioner points out "that there is video footage of [his] suicide attempt, [] that [the trial court] was initially against any inquiry into [Petitioner's] competence[, and that a f]orensic screener . . . wrote to [the trial court] that it m[ight] be appropriate to refer [Petitioner] to further forensic evaluation and [the trial court] declined."  (Docket Entry 7 at 6.)  According to Petitioner, the trial court's "order finding [Petitioner] capable of proceeding was based primarily on the [trial] court's observations of [Petitioner] during trial[, and t]he court made no inquiry into [Petitioner's] history of mental illness and did not base it's [sic] findings regarding competency on psychiatric evidence."  (Id.)

As with Subcontention 1(b), Subcontention 1(c) faces a procedural bar due to Petitioner's failure to file a timely notice of appeal or a PDR in the North Carolina Supreme Court seeking review of the North Carolina Court of Appeals' decision affirming his convictions and sentence.  See O'Sullivan, 526 U.S. at 847 ("requiring state prisoners to file [PDRs with the state's highest court] when that review is part of the ordinary appellate review

procedure in the [s]tate" in order to exhaust post-conviction claims). Although Petitioner did not specifically address Respondent's procedural default arguments with respect to Subcontention 1(c) (see Docket Entry 7 at 5-6), to the extent Petitioner's statement in the context of Subcontention 1(b) that his "appellate counsel did not explain to [him] the significance of filing a PDR" (id. at 4) constitutes an attempt to raise a claim of ineffective assistance of appellate counsel for failure to raise Subcontention 1(c) on direct appeal, such a claim would not excuse his procedural default, because Petitioner had no constitutional right to counsel beyond his direct appeal to the North Carolina Court of Appeals. See Coleman, 501 U.S. at 755-56; Wainright, 455 U.S. at 587-88; Ross, 417 U.S. at 616.[8]

Even assuming, arguendo, that Petitioner could establish either cause and prejudice or a fundamental miscarriage of justice sufficient to excuse his default, Subcontention 1(c) still falters under the deferential standards of review in 28 U.S.C. § 2254(d) and (e)(1). Petitioner raised the substance of Subcontention 1(c) on direct appeal (see Docket Entry 5-4 at 36-42), and the North Carolina Court of Appeals rejected that assignment of error as follows:

---

[8] Due to Petitioner's failure to raise a claim of appellate ineffective assistance in his MAR (see Docket Entry 5-6), any such claim would itself face a procedural bar, and he cannot avail himself of the Martinez-Trevino exception to excuse the procedural default of such a claim, Davila v. David, ___ U.S. ___, ___ - ___, 137 S. Ct. 2058, 2065-70 (2017). Moreover, the Court should again decline Petitioner's request (if any) that the Court permit him to now raise Subcontention 1(c) with the North Carolina Supreme Court as futile, as any such claim would face a mandatory state procedural bar, see N.C. Gen. Stat. § 15A-1419(a)(3).

[Petitioner] does not directly challenge the [trial court's] findings of fact, but seems to contend the trial court should have simply done more, such as ordering further evaluation of [Petitioner]'s capacity and mental health history and questioning [Petitioner] directly about his mental status. [Petitioner] notes his in-court outbursts, arguments with his attorney, and suicide attempts as evidence of his mental instability. But the trial court interpreted [Petitioner]'s actions differently than [Petitioner] would have liked and explained in the findings why it concluded that [Petitioner] was competent.

The trial court held a hearing regarding [Petitioner]'s competency and filed a written order which includes 46 findings of fact supporting its determination that [Petitioner] was competent to stand trial. Again, [Petitioner] has not identified any particular finding which he contends is unsupported by the evidence. The trial court found it had "extensive" communication with [Petitioner] due to his issues with his attorney, and [Petitioner] was able to appropriately address the situation. The trial court also found [Petitioner] was "able to understand the nature and object of the proceedings against him, to conduct his defense and assist in his defense in a rational manner[,]" but upon being convicted of the charge for possession of a firearm by a felon [Petitioner] became difficult when the jury was not present: "[Petitioner] wanted to be found not guilty in the first phase of the trial, and when he did not get what he wanted, he started acting out by being disrespectful, disruptive, and combative with the Court."

On [Petitioner]'s suicide "attempts," the trial court found [Petitioner] jumped "from the second floor to the first floor" in the jail with a sheet around his neck but that it was "wrapped loosely" and afterward [Petitioner] "calmly [walked] back up the stairs" with "no injury or bruising" on his neck. On an attempt regarding "drink[ing] cleaning fluid," the trial court found [Petitioner] "acted like he was" but "did not, and did not in truth intend to consume any cleaning fluid." The trial court considered the evidence and determined [Petitioner] had not attempted suicide but "did attempt to delay this trial[.]" The trial court made findings regarding [Petitioner]'s cooperation with detention officers, but that [Petitioner] "calmly, clearly and intentionally declared that 'plan B is about to get started fellas.'" The trial court found [Petitioner] was "attempt[ing] to delay" the trial. The trial court then found:

> 43. [Petitioner] is able to understand the
> nature and object of the proceedings against
> him.
>
> 44. [Petitioner] adequately understands the
> nature and object of the proceedings against
> him.
>
> 45. [Petitioner] comprehends his own situation
> in reference to the proceedings.
>
> 46. [Petitioner] is able to adequately assist
> in his defense in a rational and reasonable
> manner, if he chooses to do so.

> The trial court did not err in determining [Petitioner]
> was competent to stand trial. This argument is
> overruled.

Peques, 2018 WL 2016281, at *3-4 (emphasis added).[9]

The Fourteenth Amendment's Due Process Clause precludes states from trying and convicting mentally incompetent defendants. See Pate v. Robinson, 383 U.S. 375, 384–86 (1966). To determine a defendant's competency to stand trial, the trial court must decide "whether [the defendant] has sufficient present ability to consult

---

[9] Petitioner also raised the substance of Subcontention 1(c) in his MAR (see Docket Entry 5-6 at 2, 10) and, although the MAR court did not expressly discuss its grounds for denying that claim (see Docket Entry 1 at 36-39), the MAR court did deny Petitioner's ineffective assistance of trial counsel claim premised on his counsel's failure to object to proceeding after Petitioner's purported attempted suicide, noting as follows:

> As for [Petitioner]'s claim that [trial] counsel was deficient
> because he failed to object to proceedings after [Petitioner's]
> suicide attempt, the trial court found, and the [North Carolina]
> Court of Appeals affirmed, that "[Petitioner] had not attempted
> suicide but did attempt to delay th[e] trial" by feigning multiple
> suicide attempts.

(Id. at 38 (emphasis added).) Moreover, a rebuttable presumption exists that, despite the MAR court's lack of an express discussion of Petitioner's parallel claim to Subcontention 1(c), the MAR court denied that claim on its merits. See Johnson v. Williams, 568 U.S. 289, 298 (2013); Harrington v. Richter, 562 U.S. 86, 99 (2011); Harris v. Reed, 489 U.S. 255, 265 (1989). Petitioner has not offered evidence to overcome that presumption. (See Docket Entries 1, 7.)

with his lawyer with a reasonable degree of rational understanding[,] and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). The issue of competence to stand trial constitutes a question of fact. See Thompson v. Keohane, 516 U.S. 99, 111 (1995); Maggio v. Fulford, 462 U.S. 111, 117 (1983).

"Section 2254 contains two provisions relevant to the evaluation, on federal habeas, of state-court factual determinations. First, [Section] 2254(d)(2) provides that a district court may not grant habeas relief unless the adjudication of a claim by the state court 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.' Second, [Section] 2254(e)(1) provides that factual findings by the state court are presumed to be correct and that the petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Bramblett v. True, 59 F. App'x 1, 7 (4th Cir. 2003); see also Demosthenes v. Baal, 495 U.S. 731, 735 (1990) ("A state court's determinations on the merits of a factual issue are entitled to a presumption of correctness on federal habeas review[ and] . . . a state court's conclusion regarding a defendant's competency is entitled to such a presumption.").

Petitioner does not specifically contest any of the trial court's findings of fact regarding his competence, let alone overcome the presumption of their correctness with clear and convincing evidence. (See Docket Entries 1, 7.) Thus, the trial

court's determination that Petitioner remained competent to stand trial binds this Court on federal habeas review under Section 2254(e)(1), precluding relief on Subcontention 1(c).

Even if Petitioner could overcome Section 2254(e)(1)'s presumption, any attempt by Petitioner to show that the trial court unreasonably determined the facts in light of evidence presented during the trial court's competency hearing under Section 2254(d)(2) also fails. Although Petitioner asserts "that there is video footage of [his] suicide attempt" (Docket Entry 7 at 5), the trial court viewed that video footage and nevertheless found that, although Petitioner "did jump from the second floor [of the jail] to the first floor, . . . a sheet was wrapped loosely on or around [Petitioner's] neck[ and a]fter jumping, [Petitioner] walked calmly back up the stairs . . . and never touched or rubbed his neck in the slightest degree." (Docket Entry 5-3 at 51.) The trial court further found that Petitioner had "no injury or bruising to [his] neck, and . . . there was no change in speed as he fell from the second floor to the first floor." (Id.) Petitioner has not challenged those specific findings. (See Docket Entries 1, 7.)

Petitioner also contends that the trial court initially opposed "any inquiry into [Petitioner's] competence." (Docket Entry 7 at 5.) Despite any initial reluctance on the trial court's part (see Docket Entry 5-7 at 332-40), the trial court ordered a forensic evaluation of Petitioner and held a competency hearing, taking the testimony of three witnesses, on the very day the state requested such proceedings (see Docket Entry 5-3 at 47-48; see also

Docket Entry 5-7 at 332, 342-67).  Thus, Petitioner has not shown that the trial court's initial hesitation to conduct the competency hearing prejudiced him in any way.[10]

Additionally, Petitioner points out that the "[f]orensic screener . . . wrote to [the trial court] that it m[ight] be appropriate to refer [Petitioner] to further forensic evaluation and [the trial court] declined," and notes that the trial court "did not base its findings regarding competency on [the] psychiatric evidence."  (Docket Entry 7 at 5.)  However, the forensic examiner noted that Petitioner refused to "answer any questions, including questions about his full name and date of birth" and thus that she "d[id] not know whether [Petitioner] [wa]s [then] capable to proceed to trial."  (Docket Entry 5-3 at 54 (emphasis added).)  The examiner further stated that "[i]t [wa]s possible that a physical illness or a psychiatric disorder [then] impede[d] [Petitioner's] capacity" and that "[i]t m[ight] be appropriate to refer him for further forensic evaluation."  (Id. (emphasis added).)  Thus, due to Petitioner's lack of cooperation with the evaluation, the examiner could not offer an opinion as to Petitioner's competency, and even equivocated with respect to her suggestion to refer him for further evaluation.  (See id.)  In any event, the trial court labored under no obligation to fully credit or adopt the forensic examiner's report, even if the examiner had

---

[10] At the conclusion of the competency hearing, the state argued that Petitioner's "actions ha[d] demonstrated" that "he [wa]s malingering and it [wa]s purposeful" and indicated that the state stood ready to proceed with the trial. (Docket Entry 5-7 at 359.)

offered a concrete opinion. See Maggio, 462 U.S. at 117-18 (rejecting lower court's "conclu[sion] that the trial judge was obligated to credit both the factual statements and ultimate conclusions of [the examining psychiatrist] solely because he was unimpeached" as "simply not the law").

Petitioner next faults the trial court for basing its "order finding [Petitioner] capable of proceeding . . . primarily on the [trial] court's observations of [Petitioner] during trial." (Docket Entry 7 at 5.) However, the United States Supreme Court has expressly acknowledged that a determination of competency "depends heavily on the trial court's appraisal of witness credibility and demeanor." Thompson, 516 U.S. at 111 (emphasis added); see also Maggio, 462 U.S. at 118 ("'Face to face with living witnesses the original trier of the facts holds a position of advantage from which [federal habeas] judges are excluded.'" (quoting United States v. Oregon Med. Soc., 343 U.S. 326, 339 (1952))). Notably, Petitioner has not contested the accuracy of the trial court's findings with regard to Petitioner's demeanor during trial and, in particular, the change in Petitioner's demeanor after the jury found him guilty of possession of a firearm by a felon. (See Docket Entries 1, 7.)

Lastly, Petitioner challenges the trial court's failure to "ma[ke any] inquiry into [Petitioner's] history of mental illness." (Docket Entry 7 at 5.) However, Petitioner neither offered evidence that he actually has a "history of mental illness," nor explained how such a history of past mental illness would have

27

established his incompetency on the morning of August 10, 2016. (See Docket Entries 1, 7.)

In light of the foregoing analysis, the Court should deny Subcontention 1(c) as procedurally barred or, in the alternative, under Sections 2254(d)(2) and (e)(1).

## B.    Ground Two

Via Ground Two, Petitioner contends that he possesses "[n]ew evidence" (Docket Entry 1, ¶ 12 (Ground Two)) consisting of "[a]ffidavits from two witnesses stating that [Petitioner] did not live at [the] residence [where officers found the guns], the guns were not [Petitioner's], and that [the] guns may have belonged to someone next door," as well as a "[n]ewspaper article reporting on the houses in the neighborhood" (id., ¶ 12(Ground Two)(a)). According to Petitioner:

> [T]he affidavits contradict the underlying incorrect assumption that the residence was my home and that the guns belonged to me, which the conviction was based on. Affidavits also contradict the allegation that the neighboring home, where one of the guns was found, was vacant. . . . The newspaper article documents the high volume of traffic in the area and previous problems with neighboring houses, which could have been used as mitigating evidence.   Had all this evidence been introduced at trial, there is a significant probability that there would have been a different outcome, and that no reasonable juror would have found me guilty.

(Docket Entry 7 at 6.)[11]

---

[11] Petitioner argued the substance of Ground Two in his MAR (see Docket Entry 5-6 at 3, 13-18), and the MAR court denied that claim as follows:

> [Petitioner] has failed to show that the "new evidence" contained in the affidavits in his MAR filing "has a direct and material bearing upon [Petitioner]'s . . . guilt or innocence."   N.C.G.S. § 15A-1415(c).   If true, the information in the affidavits does not provide any evidence that would go to show [Petitioner]'s guilt or
> 
> (continued...)

The United States Supreme Court has recognized that a showing of actual innocence may permit a federal court to evaluate the merits of a constitutional claim even though a procedural default otherwise would preclude review. See Schlup v. Delo, 513 U.S. 298, 315, 319-22 (1995). However, the Supreme Court also ruled that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013); see also United States v. Jones, 758 F.3d 579, 583 (4th Cir. 2014) (noting that "'substantial claim[s] of actual innocence are extremely rare'" (quoting Schlup, 513 U.S. at 321)). Moreover, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup, 513 U.S. at 324. The reviewing court must consider "all of the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the rules of admissibility

---

[11](...continued)
innocence, as it only provides information as to [Petitioner]'s living arrangements and the happenings in the neighborhood where the possession took place.

(Docket Entry 1 at 39.) As the discussion that follows above shows, the MAR court did not contradict or unreasonably apply clearly established United States Supreme Court precedent in denying Petitioner's claim of new evidence.

that would govern at trial." House v. Bell, 547 U.S. 518, 538 (2006) (internal quotation marks omitted).

As an initial matter, none of the evidence Petitioner proffers qualifies as "new" under the foregoing authorities. The newspaper article in question, entitled "Liquor House Parties Flaunt Residents' Complaints" (see Docket Entry 5-6 at 15-18) and published in Triad City Beat on July 15, 2015, see https://triad-city-beat.com/liquor-house-parties-flaunt-residents-complaints (last visited Dec. 11, 2019), does not constitute "new" evidence, as Triad City Beat published the article over a year before Petitioner's convictions and sentencing in August 2016.

In the Affidavit of Katherine Anne Chiedu, Ms. Chiedu averred on August 1, 2018, that "[t]he home of 1302 E[ast] Commerce Ave[nue] belonged to me and [Petitioner] do [sic] not live there" and that "[t]he firearms that were found on the property during [Petitioner's] arrest didn't belong to me nor [Petitioner]." (Docket Entry 5-6 at 13 (emphasis added).) Ms. Chiedu further stated that "[t]he home to the left [of 1302 East Commerce Avenue] if facing the front of the home was occupied at the time of my occupancy" and that "there were always multiple people in and out at random times of the day." (Id.) In the other Affidavit, Breanna Carter averred on October 3, 2018, that, "[o]n the night of May 28th 2015 I saw a lot of traffic at 1304 E[ast] Commerce Ave[nue]" and "on the night before[,] the 27th[,] as well." (Id. at 14 (emphasis added).) Both Ms. Chiedu and Ms. Carter possessed knowledge, according to their own statements, of the occupancy

and/or other characteristics of 1302 and 1304 East Commerce Avenue, and Ms. Chiedu had purported knowledge regarding ownership of the guns in question, as of May 28, 2015, the day of Petitioner's arrest. (Id. at 13, 14.) Petitioner does not explain the delay in presenting this evidence. See McQuiggin, 569 U.S. at 399 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing" that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Accordingly, none of Petitioner's proffered evidence qualifies as "new" evidence that would support Petitioner's claim of actual innocence. Schlup, 513 U.S. at 324.

The Affidavits similarly fail to qualify as "reliable evidence" and/or "trustworthy eyewitness accounts," Schlup, 513 U.S. at 324. For example, Ms. Chiedu has neither offered any proof, beyond her own bald assertion, that 1302 East Commerce Avenue "belonged to [her],"[12] nor explained the basis of her knowledge that "[t]he firearms that were found on the property during [Petitioner's] arrest didn't belong to . . . [Petitioner]." (Docket Entry 5-6 at 13.) Similarly, Ms. Carter did not indicate what relationship, if any, she had with Petitioner, how she could have observed "traffic" at 1304 East Commerce Avenue, or how she could remember, on October 3, 2018, the comings and goings at 1304

---

[12] Guilford County's Geographic Information Services ("GIS") lists the prior owners of 1302 East Commerce Avenue dating back to August 2, 1947, none of whom include "Katherine Anne Chiedu" or any name remotely similar. See https://guilfordcountync.gov/guilfordjs (select "Search" and enter "1302 E Commerce Ave") (last visited Dec. 12, 2019).

East Commerce Avenue over three years earlier on a specific pair of days.  See McDowell v. Lemke, 737 F.3d 476, 483–84 (7th Cir. 2013) (deeming "inherently suspect" the petitioner's "eleventh hour" self-serving affidavits containing no indicia of reliability (internal quotation marks omitted)); Kuenzel v. Allen, 800 F. Supp. 2d 1162, 1181 (N.D. Ala. 2009) ("To permit such self-serving testimony to suffice would set the bar 'so low that virtually every [actual innocence] claimant would pass through it.'" (quoting Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004))).[13]

Furthermore, even if Petitioner's proffered evidence qualified as new and reliable, the court must consider "all of the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the rules of admissibility that would govern at trial" in determining whether the evidence establishes actual innocence.  House, 547 U.S. at 538 (internal quotation marks omitted).  Here, Petitioner's proffered evidence, considered along with the strong evidence of his guilt the state presented at trial, fails to establish that no reasonable

---

[13] Although both Affidavits bear the seal of a notary public and reflect that the notary administered an oath or affirmation of some sort, neither of the affidavits reflect that the affiants provided their statements under penalty of perjury.  (See Docket Entry 5-6 at 13, 14.)  Those circumstances also undermine the force of the Affidavits.  See Network Computing Servs. Corp. v. Cisco Sys., Inc., 152 F. App'x 317, 321 (4th Cir. 2005) ("The notary's certificate simply means that the [affiant]'s signature is authentic.  It is not a substitute for language indicating that the witness understood he risked prosecution for perjury if he gave false testimony."); Hill v. Southeastern Freight Lines, Inc., 877 F. Supp. 2d 375, 384 (M.D.N.C. 2012) (striking notarized statement as inadmissible because it did not contain a certification that it "[wa]s true under penalty of perjury"); Shaw v. United States, No. 1:04CV96, 2006 WL 1041790, at *5 (W.D.N.C. Apr. 18, 2006) (unpublished) (finding, despite "the notary's stamp [which] state[d] that [the document] was sworn to, that document did not qualify as an affidavit, because it "d[id] not include a statement that the [p]etitioner either swore or declared under penalty of perjury as to the truth of the contents of the document").

32

juror would have voted to find Petitioner guilty beyond a reasonable doubt. See McQuiggin, 569 U.S. at 392.

As the jury instructions given by the trial court make abundantly clear, ownership of 1302 East Commerce Avenue and human traffic at 1302 and 1304 East Commerce Avenue during times other than the time of the officers' search in the early morning hours of May 28, 2015, lack relevance to a determination of possession:

> [T]he [s]tate must prove . . . beyond a reasonable doubt . . . that [ Petitioner] <u>possessed or had in his custody, care, or control</u> a firearm . . . . I instruct you that <u>possession of a firearm may be either actual or constructive</u>. A person has actual possession of a firearm if the person has the firearm on the person, is aware of its presence, and has both the power and intent to control its disposition or use. A person has constructive possession of a firearm if the person does not have the firearm on the person but is aware of its presence and has both the power and intent to control its disposition or use. A person's awareness of the presence of the firearm and the person's power and intent to control its disposition or use may be shown by direct evidence or may be inferred from the circumstances.

(Docket Entry 5-7 at 279-80 (emphasis added).)

In support of the state's theory that Petitioner possessed the firearms in question, the jury heard evidence that 1) Petitioner answered the door of 1302 East Commerce Avenue accompanied by two dogs when the probation officers knocked (see id. at 186, 191), 2) Petitioner indicated he would secure his dogs and, during the time Petitioner remained in the home supposedly securing his dogs, the probation officers heard a window open followed immediately by a "clink," or metal-on-metal sound, followed by the sound of a window closing (id. at 186, 191, 212-15, 222), 3) when Petitioner returned to the door, his dogs remained with him (id.), 4) a probation

officer and a police officer moments later located two fully loaded, operable firearms in the immediate proximity of the window of a bedroom where officers found nearly all of the home's furnishings and other belongings (id. at 187, 195, 212-13, 215, 218, 230, 232-33, 235-37, 242-43), 5) an officer described the guns as lying on top of leaves and other debris (id. at 233), 6) the officers found no one else in the home (id. at 194, 247), 7) the officers observed a chain-link fence in close proximity to both firearms (id. at 187, 189-90, 215-16, 218), and 8) police officers determined that the house next door where they found one of the firearms appeared vacant and no one answered their knocks on the doors and windows (id. at 195, 215). When considered with such strong evidence of Petitioner's guilt, his proffered evidence falls far short of the Schlup standard for actual innocence.

Accordingly, Ground Two does not entitle Petitioner to relief.

## C.  **Ground Three and Six**[14]

In Ground Three, Petitioner argues that his "[c]onviction [was] obtained by use of [a] coerced or illegally obtained confession" (Docket Entry 1, ¶ 12(Ground Three)) because, "[a]t trial[, Petitioner's trial counsel] opened the door to suppressed alleged statements [by Petitioner] which led to the prosecutor addressing [the] statements over objection" (id., ¶ 12(Ground Three)(a); see also Docket Entry 7 at 7 ("Unless [Petitioner wa]s

---

[14] Although phrased as different constitutional violations, Grounds Three and Six both arise out of Petitioner's allegation that the jury improperly heard testimony regarding previously suppressed statements that Petitioner had made during his detention by probation officers while they searched 1302 East Commerce Avenue.  (See Docket Entry 1, ¶ 12(Ground Three), (Ground Six).)  This Recommendation will thus discuss both Grounds together.

warned of his Fifth Amendment rights, any pretrial statements elicited from [him we]re inadmissible at trial."). Ground Six contends that Petitioner's "[c]onviction [was] obtained by a violation of the privilege against self-incrimination," because "[o]fficers claim[ed] that [Petitioner] admitted to guilt prior to being given Miranda warnings[ and the a]lleged statements were introduced at trial despite a motion to suppress [the] statements." (Docket Entry 1 at 13; see also Docket Entry 7 at 8.)

To the extent Petitioner attempts to ascribe error to the prosecutor for questioning a probation officer on direct examination (and arguing in closing) regarding two previously suppressed statements (see Docket Entry 5-7 at 205-06, 271-72, 274), or to the trial court for overruling the objections of Petitioner's trial counsel and allowing the prosecutor to question the officer (and argue in closing) regarding those previously suppressed statements (see id. at 205, 206), any such attempt fails under the deferential review standard of Section 2254(d). Petitioner raised the substance of Grounds Three and Six in his MAR (see Docket Entry 5-6 at 3-4 (reflecting handwritten X's next to claims that his "[c]onviction [was] obtained by use of [a] coerced or illegally obtained confession" and "by a violation of the privilege against self-incrimination")), and the MAR court acknowledged (see Docket Entry 1 at 37) but summarily denied those claims (see id. at 38-39). Petitioner has not shown that the MAR court contradicted or unreasonably applied clearly established federal law in denying those claims, as Petitioner has pointed to

no such United States Supreme Court precedent that would prohibit admission by the trial court and/or use by the prosecution of suppressed evidence once the defense has opened the door to it (see Docket Entries 1, 7). See Tillman v. Thaler, No. A-09-CA-582, 2010 WL 2731762, at *7 (W.D. Tex. July 9, 2010) (unpublished) ("[T]he trial court did not err in allowing the [s]tate to use previously suppressed statements after defense counsel opened the door to them[ and ] the [c]ourt finds nothing unreasonable in the state court's application of clearly established law or in its determination of the facts in light of the evidence."); see also Wenglikowski v. Jones, 306 F. Supp. 2d 688, 705 (E.D. Mich. 2004) ("It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief." (citing Estelle v. McGuire, 502 U.S. 62, 67–68 (1991))).[15]

## D.   **Grounds Four and Five[16]**

Ground Four alleges "[u]nconstitutional search and seizure" (id., ¶ 12(Ground Four)), in that "[p]robation officers and High Point Police searched the residence [where they found the guns] without a warrant[ and Petitioner] did not live at the residence"

---

[15] If, on the other hand, Grounds Three and Six attack Petitioner's trial counsel's effectiveness for opening the door to the previously suppressed statements, Petitioner has brought such a claim in Ground Nine (see Docket Entry 1 at 16; see also Docket Entry 7 at 10-12), and this Recommendation will address that claim in the context of Subconention 9(e) of Ground Nine.

[16] Both Ground Four and Ground Five allege violations of Petitioner's right against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. (See Docket Entry 1, ¶ 12(Ground Four), (Ground Five).) This Recommendation will accordingly analyze both Grounds together.

(id., ¶ 12(Ground Four)(a); see also Docket Entry 7 at 7-8 ("[T]he
conditions of my probation consisted of warrantless searches . . .
[but] did not extend to include the property of others, and the
residence that was searched was not my home."). Via Ground Five,
Petitioner maintains that his "[c]onviction [was] obtained by the
use of evidence obtained pursuant to an unlawful arrest," because
"[o]fficers placed [Petitioner] in handcuffs without any
provocation from [him]." (Docket Entry 1 at 12; see also Docket
Entry 7 at 8 ("[U]nder the exclusionary rule, evidence obtained in
violation of the Fourth . . . Amendment[] may not be introduced at
trial as evidence to support [a] defendant's guilt.").)

Grounds Four and Five fail, because "Fourth Amendment claims
generally cannot be considered on habeas review." Salazar v.
Jones, No. 1:09CV859, 2010 WL 3895574, at *4 (M.D.N.C. Sept. 30,
2010) (unpublished) (citing Stone v. Powell, 428 U.S. 465, 481-82
(1976), Wright v. West, 505 U.S. 277, 293 (1992), Mueller v.
Angelone, 181 F.3d 557, 570 n.8 (4th Cir. 1999), and Grimsley v.
Dodson, 696 F.2d 303, 304 (4th Cir. 1982)). Here, "Petitioner
certainly had a full and fair opportunity to contest [his arrest
and the search of 1302 East Commerce Avenue as unlawful] at trial
if he wished. Therefore, the Court cannot consider [Grounds Four
or Five] under the rule in Stone." Id.

## E. Ground Seven

Petitioner asserts, in Ground Seven, that his "[c]onviction
[was] obtained by action of the trial jury . . . which was
unconstitutionally selected, impaneled, and constituted," because

"[a j]uror . . . admitted to being friends with the Assistant Chief of Police and that she m[ight have been] subconsciously bias[ed]." (Docket Entry 1 at 14; see also Docket Entry 7 at 8-9 ("[The j]uror [] admitted to being unsure about her bias[, and e]ven after the prosecutor restated the question asking if [the juror] could lay aside her bias, [the juror] still did not give a definite answer by replying 'I think so[.]'").)  Via Ground Seven, Petitioner appears to fault the trial court for failing to, sua sponte, strike the juror in question for cause.[17]

During jury selection, the following discussion took place between the prosecutor and the juror in question:

> [PROSECUTOR]: Does anybody know any law enforcement officers, probation officers, anybody like that?  Yes, ma'am?
>
> JUROR []: We're friends with the Assistant Chief of Police in High Point.
>
> [PROSECUTOR]: Oh, good. All right.
>
> JUROR []: And my -- the boys are best friends.
> [PROSECUTOR]: Your son is best friends with [the] Assistant Chief['s ] son and y'all are friends with [the Assistant] Chief []?
>
> JUROR []: Uh-huh.
>
> [PROSECUTOR]: Obviously he won't be directly involved in this case, but [the] High Point Police Department is involved.  Is there anything about your friendship with the [A]ssistant [C]hief that makes you feel like you would have to vote one way or the other?

---

[17]  To the extent Petitioner argues, in Ground Seven, that his trial counsel provided ineffective assistance for failing to either peremptorily challenge or move to strike for cause the juror in question, Petitioner has brought such a claim in Ground Nine (see Docket Entry 1 at 16; see also Docket Entry 7 at 10-12), and this Recommendation will address that claim in the context of Subcontention 9(p) of Ground Nine.

JUROR []: <u>I want to say no.  Subconsciously, I don't know</u>.

[PROSECUTOR]: Let me put it to you in a different way. If you serve on this jury and then you see [the] Assistant Chief [] next week, <u>do you feel like you have to vote guilty or you have to vote not guilty in order to make him happy</u> or --

JUROR []: <u>No, I don't feel that</u>.

[PROSECUTOR]: So, although you know a High Point police officer, <u>you feel like you could set that aside and just base your opinion on the evidence that's presented</u>?

JUROR []: <u>I think so</u>.

(Docket Entry 5-7 at 133-34 (emphasis added).)  Petitioner's trial counsel thereafter peremptorily excused four other jurors, but neither peremptorily excused nor moved to strike for cause the juror in question.  (<u>See</u> <u>id.</u> at 146, 156.)

The Sixth Amendment guarantees the right to trial by an impartial jury, <u>see</u> <u>Parker v. Gladden</u>, 385 U.S. 363, 364 (1966), and thus a trial court should exclude a prospective juror for cause when his or her views would "'prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and [] oath,'" <u>Wainwright v. Witt</u>, 469 U.S. 412, 424 (1985) (quoting <u>Adams v. Texas</u>, 448 U.S. 38, 45 (1980)).  However, "[a] juror is <u>presumed impartial</u>, and the existence of a preconception is insufficient to rebut the presumption if the juror can 'lay aside his [or her] impression or opinion and render a verdict based on the evidence presented in court.'" <u>Poynter v. Ratcliff</u>, 874 F.2d 219, 221 (4th Cir. 1989) (quoting <u>Irvin v. Dowd</u>, 366 U.S. 717, 723 (1961)) (emphasis added). "A challenge to a juror for cause is usually limited to

demonstrations of actual bias, with the doctrine of implied bias applying only to 'extreme situations' where the circumstances make it highly unlikely that the average person could remain impartial." United States v. Turner, 389 F.3d 111, 117 (4th Cir. 2004). Furthermore, "[r]eviewing courts owe deference to a trial court's ruling on whether to strike a particular juror." White v. Wheeler, __ U.S. __, __, 136 S. Ct. 456, 460 (2015).

Ground Seven faces a procedural bar.  As Respondent argues, "Petitioner could have raised Ground [Seven] on direct appeal but did not do so."  (Docket Entry 5 at 19; see also Docket Entry 5-4 (Petitioner's appellate brief lacking any argument regarding trial court's failure to, sua sponte, strike the juror in question for cause).)  Thus, "North Carolina's mandatory post-conviction procedural bar statute" bars Ground Seven (Docket Entry 5 at 19 (citing N.C. Gen. Stat. § 15A-1419(a)(3), (b) (claim procedurally barred where, "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue . . . but did not do so," absent proof of "[g]ood cause" and "actual prejudice" or "a fundamental miscarriage of justice"))).  See Lawrence, 517 F.3d at 714 (noting that Fourth Circuit "ha[d] consistently held that [N.C. Gen. Stat.] § 15A-1419(a)(3) is an independent and adequate state ground for purposes of procedural default" (citing McCarver, 221 F.3d at 589, and Williams, 146 F.3d at 209)).  In response, Petitioner argues neither that "good cause" and "actual prejudice" exist under Section 15A-1419(b)(1), nor that "failure to consider

[Ground Seven] will result in a fundamental miscarriage of justice"
under Section 15A-1419(b)(2). (See Docket Entry 7 at 8-9.)

Furthermore, even if Petitioner could demonstrate cause and
prejudice and/or a fundamental miscarriage of justice sufficient to
excuse his procedural default, Ground Seven still fails on the
merits. In Petitioner's MAR, he faulted his trial counsel for
failing to move to strike the allegedly biased juror as one subpart
of his ineffective assistance of trial counsel claim. (See Docket
Entry 5-6 at 4, 9.) The MAR court denied the claim, noting as
follows:

> [Petitioner] asserts . . . that his [trial] counsel
> handled his case improperly in that . . . [trial counsel]
> did not strike [a] juror . . . after she admitted to
> having a friendship with the Assistant Chief of Police
> and said she may "subconsciously be bias [sic]."
>
> . . .
>
> . . . [Petitioner] failed to establish in his MAR that
> his [trial] counsel's performance was so deficient that
> it prejudiced [Petitioner's] defense such that but for
> his [trial] counsel's errors the result of the trial
> would have been different.
>
> . . .
>
> . . . "[D]ecisions such as . . . which jurors to accept
> or strike . . . are strategic and tactical decisions that
> are within the 'exclusive province' of the attorney."
> State v. Rhue, 150 N.C. App. 280, 290, 562 S.E.2d 72, 79
> (2002).

(Docket Entry 1 at 37-38.) Although the MAR court addressed
Petitioner's biased juror claim in the context of an ineffective
assistance claim, Petitioner has raised that claim in Ground Nine
of his instant Petition (see Docket Entry 1 at 16; see also Docket
Entry 7 at 10-12) and, as detailed below in the discussion of that

claim (Subcontention 9(p) of Ground Nine), the MAR court neither
contravened nor unreasonably applied the controlling United States
Supreme Court precedent, Strickland v. Washington, 466 U.S. 668
(1984), in denying Petitioner's parallel ineffective assistance
claim.  Because the MAR court's finding of no prejudice under
Strickland warrants deference under Section 2254(d), that finding
also precludes Petitioner from showing that the trial court's
alleged error in failing to, sua sponte, strike the juror at issue
for cause had a "'substantial and injurious effect or influence in
determining the jury's verdict,'" Brecht v. Abrahamson, 507 U.S.
619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750,
766 (1946)), because the Strickland prejudice standard requires a
greater demonstration of harm than the Brecht harmless error
standard, see Kyles v. Whitley, 514 U.S. 419, 436 (1995).

Ground Seven thus fails as both procedurally barred and on its
merits.

**F.  Ground Eight**

Petitioner's Ground Eight alleges that his "[c]onviction [was]
obtained by denial of [his] right to present evidence in his own
defense" because, "[o]n March 3[], 2016[,] and again on August 8[],
2016[, he] made it clear to the [trial] court that [his trial
counsel] did not know the details of [Petitioner's] case, but the
[trial] court forced [Petitioner] to proceed without evidence or
witnesses."  (Docket Entry 1 at 15.)  In that regard, Petitioner
maintains that, "[b]y the denial of substitute counsel and the
breakdown in communication between [Petitioner] and [trial]

counsel, [he] was unable to present an alibi, witnesses, and evidence," including "pretrial transcripts[, ] discovery statements, newspaper articles, the lease agreement, the address where [his] probation was assigned, and the conditions of [his] probation." (Docket Entry 7 at 9 (emphasis added).)

To the extent Petitioner decries, in Ground Eight, the trial court's denial of Petitioner's requests to substitute counsel, as discussed above in Subcontention 1(b), such a claim remains procedurally barred and fails under Section 2254(d). To the extent Petitioner maintains that, apart from the trial court's denial of Petitioner's requests for substitute counsel, the trial court somehow "forced" Petitioner to proceed without presenting evidence or witnesses (Docket Entry 1 at 15), the trial transcript utterly belies Petitioner's position:

> [TRIAL] COURT: Is there going to be defense evidence?
>
> [TRIAL COUNSEL]: I would need to speak with [Petitioner].
>
> [TRIAL] COURT: Okay. Go right ahead. Let me know when you're ready to -- we'll just be at ease. Go ahead and talk to him.
>
> . . .
>
> At this time is [Petitioner] going to present evidence?
>
> [TRIAL COUNSEL]: No, sir, no evidence.
>
> [TRIAL] COURT: Okay. And so [Petitioner] is not going to call witnesses and testify on his behalf and he's not going to testify, both of those?
>
> [TRIAL COUNSEL]: Both of those.
>
> [TRIAL] COURT: Okay. [Petitioner], if you'll stand up, sir. Similar to what I've already asked you before the trial began. I told you I was going to do this. <u>All I'm trying to do is make sure you and your attorney are</u>

communicating correctly and accurately.  Did you hear his
representations to the court?

[PETITIONER]: Yes, sir.

[TRIAL] COURT: Okay.  Was he correct?

[PETITIONER]: Yes, sir.

[TRIAL] COURT: Okay.  I want to be clear.  We've already
discussed this once, but while we're on the record let me
go ahead and do it again.  Your attorney has a duty based
on his training and  experience to tell you whether he
thinks in his professional opinion you should present
evidence and/or testify, two different things . . . .  He
also has a duty to discuss with you the advantages and
disadvantages of  you,  yourself,  testifying  and/or
presenting other evidence.  However, ultimately you, not
your attorney, make the final decision about whether you
testify or present other evidence.  Do you understand so
far?

. . .

[PETITIONER]: [ Y]es, sir.

. . .

[TRIAL] COURT: [Petitioner], have you had the opportunity
to speak with your attorney to your satisfaction about
the advantages and disadvantages of you, yourself,
testifying in this case?

[PETITIONER]: Yes, sir.

[TRIAL] COURT: Have you made a decision, you, yourself,
made a decision about whether you're going to testify?

[PETITIONER]: Yes, sir, I have.

[TRIAL] COURT: What is that decision?

[PETITIONER]: I do not wish to testify, sir.

[TRIAL]  COURT:  Has  anybody  forced  you  to  make  that
decision against your will?

[PETITIONER]: No, sir.

[TRIAL] COURT: Okay.  Have you made that decision freely
and  voluntarily  after  full  consultation  with  your
attorney?

[PETITIONER]: <u>Yes, sir</u>.

[TRIAL] COURT: Okay.  Similarly, <u>have you had a chance to speak with your attorney to your satisfaction about the advantages and disadvantages of presenting other evidence in this case</u>?

[PETITIONER]: <u>Yes, sir</u>.

[TRIAL] COURT: <u>Have you, yourself, made a decision about whether you're going to present other evidence</u>?

[PETITIONER]: <u>Yes, sir</u>.

[TRIAL] COURT: What is that decision?

[PETITIONER]: <u>I do not wish to, sir</u>.

[TRIAL] COURT: Okay.  <u>Has anybody forced you to make that decision against your will</u>?

[PETITIONER]: <u>No, sir</u>.

[TRIAL] COURT: And, finally, <u>have you made that decision not to present other evidence freely and voluntarily after full consultation with your attorney</u>?

[PETITIONER]: <u>Yes, sir</u>.

[TRIAL] COURT: [Petitioner], thank you.  You may sit down, sir.  At this point . . . , I'm going to make some findings.  Object if you find any objectionable, okay?

[TRIAL COUNSEL]: Yes, sir.

[TRIAL] COURT: The court finds that [Petitioner] has had the opportunity to speak with his attorney to his satisfaction about the advantages and disadvantages of testifying himself and/or presenting other evidence and that [Petitioner] has elected not to testify and not to present other evidence, and that he's made these decisions freely and voluntarily after full consultation with his attorney based on trial strategy considerations free from any coercion or duress.  Any objection to any of those findings . . .?

[TRIAL COUNSEL]: <u>No objection</u>.

(Docket Entry 5-7 at 256-61 (emphasis added).)  Indeed, the record convincingly shows that the trial court went to great lengths to

ensure that Petitioner's decision not to testify or to present evidence remained knowing, voluntary, and fully informed.

Simply put, Ground Eight does not warrant relief.

## G.   **Ground Nine**

Lastly, Petitioner maintains that his "[c]onviction [was] obtained due to the ineffectiveness of [his] trial [] counsel," in that trial "counsel did not present [an] arresting officer's contradictory statements, did not present evidence, misstated facts, did not present witnesses, opened the door to suppressed statements, did not dispute ownership of [the home where officers found the guns], did not address probation's right to search, used profanity towards [Petitioner], expelled [Petitioner] from trial counsel's office, violated lawyer/client confidentiality, did not investigate, did not present mitigating factors, did not question [the] credibility of [the] state's witnesses, was unable to answer simple questions, did not object to proceeding after [Petitioner's] suicide attempt, did not give advice whether or not to testify, [and] did not strike [a] bias[ed] juror." (Docket Entry 1 at 16; see also Docket Entry 7 at 10-12.)  Petitioner offers no further facts in support of this claim. (See id.)[18]

---

[18] Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts "explicitly requires that a petitioner summarize the facts supporting each of the alleged grounds for relief." Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990).  Thus, a habeas petitioner who generally references allegations raised in other case records and briefs "patently fail[s] to comply with Rule 2(c)." Id.  Federal courts need not "sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief." Id. (citing Williams v. Kullman, 722 F.2d 1048, 1051 (2d Cir. 1983)).  The particularized facts which entitle a petitioner to habeas relief "must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits
(continued...)

Petitioner raised the substance of all of his subcontentions of ineffective assistance in his MAR (see Docket Entry 5-6 at 4, 7-9), and the MAR court denied them all (see Docket Entry 1 at 36-39).[19] In light of that adjudication on the merits, Section 2254(d)'s highly deferential standard governs this Court's review of Ground Nine, and the Court thus must consider whether the North Carolina Court of Appeals and/or the MAR court contradicted or unreasonably applied clearly established federal law in denying Petitioner's parallel claims. The Fourth Circuit has provided guidance in regards to the clearly established law governing ineffective assistance claims:

> In order to establish an ineffective assistance of counsel claim . . ., [a petitioner must] establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [Strickland, 466 U.S. at 688], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
>
> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a [petitioner] to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

---

[18](...continued)
further habeas corpus review." Id. at 334 (emphasis added). The review of Ground Nine will proceed accordingly.

[19] As discussed further in Subcontention 9(e) of Ground Nine, Petitioner argued just one of his 16 subcontentions of ineffective assistance of trial counsel (regarding trial counsel's opening the door to suppressed statements) on direct appeal (see Docket Entry 5-4 at 32-36), and the North Carolina Court of Appeals denied that assignment of error, see Pegues, 2018 WL 2016281, at *2.

> Hence, "court[s] must indulge a strong presumption that
> counsel's conduct falls within the wide range of
> reasonable professional assistance . . . [and] that,
> under the circumstances, the challenged action might be
> considered sound trial strategy." Id. (internal
> quotation marks omitted).
>
> Similarly, in evaluating whether [a petitioner] has shown
> actual prejudice from any such deficient performance, it
> is insufficient for the [petitioner] "to show that the
> errors had some conceivable effect on the outcome of the
> proceeding," because "[v]irtually every act or omission
> of counsel would meet that test." Id. at 693. Rather,
> a "reasonable probability" that the result would have
> been different requires "a probability sufficient to
> undermine confidence in the outcome." Id. at 694. When
> challenging a conviction, "the question is whether there
> is a reasonable probability that, absent the errors, the
> factfinder would have had a reasonable doubt respecting
> guilt." Id. at 695.

Fisher v. Lee, 215 F.3d 438, 446-47 (4th Cir. 2000) (parallel citations omitted).

Moreover, the United States Supreme Court has cautioned that "[s]urmounting Strickland's high bar is never an easy task. . . . Even under de novo review, the standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted). Further, "[w]here the issue is whether the state court has unreasonably applied Strickland standards to a claim of ineffective assistance of counsel, . . . double deference is required . . . ." Lavandera–Hernandez v. Terrell, No. 1:12CV553, 2013 WL 1314721, at *4 (M.D.N.C. Mar. 28, 2013) (Schroeder, J.) (unpublished) (internal quotation marks omitted), appeal dismissed, 539 F. App'x 159 (4th Cir. 2013); see also Harrington, 562 U.S. at 105 ("The standards created by Strickland and § 2254(d) are both highly deferential and when the two apply in tandem, review is

doubly so." (internal citations and quotation marks omitted)).

Accordingly, when the Court's examination of an ineffective assistance claim proceeds under Section 2254(d), "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 526 U.S. at 105.

In other words, "under the dual, overlapping lenses of [Section 2254(d)] and Strickland [the Court must] ask[] the following question: Was the [state] court's holding incorrect to a degree that its conclusion was so lacking in justification that it was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement?" Moore v. Hardee, 723 F.3d 488, 496 (4th Cir. 2013) (internal brackets, ellipses, and quotation marks omitted). Under this standard, the Court should conclude that neither the North Carolina Court of Appeals nor the MAR court contradicted or unreasonably applied Strickland in denying Petitioner's ineffective assistance of trial counsel claims.

1. Failure to Present Officer's Contradictory Statements ("Subcontention 9(a)")

Petitioner first complains that his that trial "counsel did not present [an] arresting officer's contradictory statements." (Docket Entry 1 at 16; see also Docket Entry 7 at 10.) Petitioner neither identifies the "arresting officer" in question nor the "contradictory statements" that his trial counsel should have presented (id.) and thus Subcontention 9(a) fails as conclusory and unsupported. See Nickerson, 971 F.2d at 1136 (recognizing that

"[u]nsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing").

Furthermore, Petitioner raised the substance of Subcontention 9(a) in his MAR (see Docket Entry 5-6 at 4, 7), arguing that his trial counsel should have introduced an "arresting officer's contradictory statements" during the rejection of plea hearing on March 3, 2016, that he or she "s[aw two] guns come out of the window which differed from original statements in the Motion of Discovery and trial testimonies" (id. at 7). According to Petitioner, he "told [his trial counsel] to present transcripts from [the] March 3, 2016 hearing at trial as proof of officers lying, but [trial counsel] did not." (Id.) Although the MAR court did not expressly discuss its grounds for denying that claim (see Docket Entry 1 at 36-39),[20] a rebuttable presumption exists that, despite the MAR court's lack of an express discussion of Petitioner's parallel claim to Subcontention 9(a), the MAR court denied that claim on its merits, see Johnson v. Williams, 568 U.S. 289, 298 (2013); Harrington, 562 U.S. at 99; Harris v. Reed, 489 U.S. 255, 265 (1989). Petitioner has not offered evidence to overcome that presumption. (See Docket Entries 1, 7.) The MAR court did not unreasonably apply or contradict Strickland in denying Petitioner's parallel claim to Subcontention 9(a).

---

[20] The MAR court did find that "[t]rial counsel's decision to not introduce certain evidence . . . is generally a matter of trial strategy and will not be second-guessed by the courts." (Docket Entry 1 at 38 (citing State v. Allen, 233 N.C. App. 507, 510 (2014)).)

First, the record does not reflect that trial counsel possessed a good faith basis to question <u>any</u> of the officers present at the scene of Petitioner's arrest about this supposedly prior inconsistent statement, because the transcript of the rejection of plea hearing <u>does not identify the individual who made the statement</u>:

> [TRIAL] COURT: [Petitioner] was subject to searches. They went to his house and they found a firearm in his possession in his house?
>
> [PROSECUTOR]: [Petitioner] threw the guns out a window on the side of the house.
>
> [TRIAL] COURT: They saw him throwing it or they saw the gun just going out the window?
>
> [PROSECUTOR]: Saw the gun going out the window <u>more or less</u>.
>
> <u>UNIDENTIFIED SPEAKER</u>: Your Honor, I was part of the search and I was the one that saw the two guns come out the side of the window.

(Docket Entry 5-7 at 5-6 (emphasis added).) Moreover, even if Petitioner's trial counsel had attempted to question any of the officers at trial regarding the statement in question and the officers had denied making the statement, such denials would have remained "generally conclusive and [could] not [have been] contradicted by extrinsic testimony." <u>See</u> <u>State v. Cutshall</u>, 278 N.C. 334, 349 (1971); <u>see also</u> <u>State v. Najewicz</u>, 112 N.C. App. 280, 289 (1993) ("[O]nce a witness *denies* having made a prior inconsistent statement, the [s]tate may not introduce a prior statement in an attempt to discredit the witness; the prior statement concerns only a *collateral matter, i.e.*, whether the statement was ever made.").

Second, the statement that the speaker "saw the two guns come out the side of the window" (Docket Entry 5-7 at 5-6) lacks much impeachment value, because it does not differ greatly from the officers' testimony at trial that, while Petitioner remained inside the home purportedly securing his dogs, they heard a window open followed immediately thereafter by a "clink," or metal-on-metal sound, coming from the left side of the house where officers then found two firearms (see id. at 186, 187, 191, 195, 212-15, 218, 222, 230, 232-33, 235-37, 242-43). Moreover, the state could have objected to trial counsel's attempt to question the officers about the prior statement under Rule 403 of the North Carolina Rules of Evidence, and argued that the risk of unfair prejudice arising out of admission of the unidentified statement substantially outweighed any minimal probative value. See Carnell Constr. Corp. v. Danville Redev. & Hous. Auth., 745 F.3d 703, 719-20 (4th Cir. 2014) (finding trial court erred by failing to exclude prior inconsistent statement as unduly prejudicial under Rule 403 of Federal Rules of Evidence, because statement lacked probative value due to witness's denial that he made (or even knew about) statement).

Given the questionable admissibility and negligible impeachment value of the statement in question, as well as the risks inherent in asking the officers about the statement, Petitioner's trial counsel could not have rendered ineffective assistance for failing to pursue this line of questioning. See Horton v. North Carolina, No. 3:14CV273, 2014 WL 6605422, at *9 (W.D.N.C. Nov. 20, 2014) (unpublished) (holding that trial "counsel

used reasonable trial strategy in deciding not to impeach [the victim with a prior inconsistent statement]," given risk victim would "den[y] making the statement").

## 2. Failure to Present Evidence ("Subcontention 9(b)")

Next, Petitioner faults his trial counsel for "not present[ing] evidence." (Docket Entry 1 at 16; see also Docket Entry 7 at 10 (phrasing issue as trial counsel's failure to "present [the 2015 Triad City Beat] article written by Jordan Green").) As discussed above in the context of Ground Two, the article describes loud parties taking place at 1302 East Commerce Avenue and other nearby houses during the time period from May 28, 2015, to July 15, 2015. (See Docket Entry 5-6 at 15-18.) Petitioner raised the substance of this Subcontention in his MAR (see Docket Entry 5-6 at 4, 7), and the MAR court's denial of that claim (see Docket Entry 1 at 38-39) did not unreasonably apply or contradict Strickland. As detailed above, the article lacks relevance to the issue before the jury of whether Petitioner constructively possessed the firearms in question on the morning of May 28, 2015, the day of Petitioner's arrest. Therefore, the MAR court correctly determined that Petitioner demonstrated neither deficient performance nor prejudice under Strickland.

## 3. Misstatement of Facts ("Subcontention 9(c)")

Petitioner additionally challenges his trial counsel's performance on the grounds that counsel "misstated facts." (Docket Entry 1 at 16; see also Docket Entry 7 at 10-12.) However, Petitioner neither identifies any of the facts his trial counsel

53

allegedly misstated, nor explains how such misstatements prejudiced him (id.) and thus Subcontention 9(c) fails as conclusory and unsupported.  See Nickerson, 971 F.2d at 1136 (recognizing that "[u]nsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing").

Furthermore, Petitioner raised the substance of Subcontention 9(c) in his MAR (see Docket Entry 5-6 at 4, 7), contending that his trial counsel "said that [Petitioner] lived at the residence and that it was [Petitioner's] house[, as well as] . . . quoted [Petitioner] as saying the guns were for his protection which is false" (id. at 7 (citing Docket Entry 5-7 at 178, 397)).  Although the MAR court did not expressly discuss its grounds for denying that claim (see Docket Entry 1 at 36-39), a rebuttable presumption exists that, despite the MAR court's lack of an express discussion of Petitioner's parallel claim to Subcontention 9(c), the MAR court denied that claim on its merits, see Johnson, 568 U.S. at 298; Harrington, 562 U.S. at 99; Harris, 489 U.S. at 265.  Petitioner has not offered evidence to overcome that presumption.  (See Docket Entries 1, 7.)  The MAR court did not unreasonably apply or contradict Strickland in denying Petitioner's parallel claim to Subcontention 9(c).

Petitioner first criticizes the following statement by his trial counsel during his opening statement:

[TRIAL] COURT: Will there be a opening statement for [Petitioner]?

[TRIAL COUNSEL]: So, [Petitioner] is on probation and probation officers from High Point decide that as part of

> an operation <u>they're going to search [Petitioner's]</u>
> <u>residence which is at 1302 Commerce Avenue</u>.

(Docket Entry 5-7 at 178 (emphasis added).)  However, as discussed above in the context of Ground Two, Petitioner has provided no competent, reliable evidence that he did not, in fact, reside at 1302 East Commerce Avenue.  Thus, Petitioner's position that trial counsel "misstated" Petitioner's residence fails as merely conclusory.  <u>See</u> <u>Nickerson</u>, 971 F.2d at 1136.  Moreover, Petitioner neither contests his presence at 1302 East Commerce Avenue with two dogs in the early morning hours of May 28, 2015, nor denies his ownership of the furnishings and other items in the house described by officers as belonging to him.  (<u>See</u> Docket Entries 1, 7.)  Under such circumstances, actual ownership of 1302 East Commerce Avenue lacks relevance to the jury's primary issue of whether Petitioner constructively possessed the firearms in question on May 28, 2015. Accordingly, the MAR court correctly determined the statement in question did not constitute deficient performance by trial counsel.

Petitioner also takes issue with his trial counsel's reference to one of Petitioner's previously suppressed statements during counsel's argument to the trial court at sentencing (quoted below with portions of the state's sentencing argument for context):

> [PROSECUTOR]: <u>[Petitioner] admitted he had the guns for</u>
> <u>protection</u>.  You heard the description of the house, Your
> Honor.  There's no furniture in that home.  The living
> room was empty, save for one chair.  One bedroom
> completely empty.  His bedroom, a blow-up mattress on the
> floor and a television on the floor.  <u>If he had guns for</u>
> <u>protection, what was he protecting, Your Honor?  It's not</u>
> <u>likely that a burglar is going to break in and steal a</u>
> <u>chair.  He had loaded guns at the ready</u>.
>
> . . .

> [TRIAL COUNSEL]: Judge, to start out with, and I'm sure
> [Petitioner] wants me to add this because he wrote this
> down and wanted me to say it to begin with, was that it
> was a bad neighborhood. And it was something that I
> think <u>he gave a statement to the officer that it was for
> protection for him</u>, not necessarily anything -- any
> property he had in his house.
>
> [PETITIONER]: I didn't never say that.
>
> [TRIAL COUNSEL]: Okay.
>
> [PETITIONER]: I never said that.
>
> [TRIAL COUNSEL]: Well, strike that.
>
> [TRIAL] COURT: All right.

(Docket Entry 5-7 at 397 (emphasis added).)

Trial counsel's statement that Petitioner had told an officer that the firearms in question "w[ere] for protection for [Petitioner], not necessarily . . . any property he had in his house" falls far short of constituting deficient performance under <u>Strickland</u>. As the above-quoted discussion makes clear, trial counsel argued to the trial court that Petitioner owned the guns for his own protection because he lived in a bad neighborhood in support of a more lenient sentence and to specifically counter the state's contention that Petitioner owned the guns to pursue criminal endeavors. Furthermore, that statement could not have prejudiced Petitioner, as trial counsel made it 1) <u>after</u> the jury's guilty verdicts and outside the presence of the jury, which had already heard testimony regarding Petitioner's statement to an officer that he owned the guns for protection during the trial (<u>see, e.g.</u>, Docket Entry 5-7 at 206), and 2) to the trial court, which had also already heard the testimony regarding that statement

(see id.).  Therefore, the MAR court's ruling summarily denying Petitioner's parallel claim (see Docket Entry 5-6 at 7; see also Docket Entry 1 at 38-39) stands under Section 2254(d).

4.  Failure to Present Witnesses ("Subcontention 9(d)")

In Subcontention 9(d), Petitioner objects to his trial counsel's failure to "present witnesses." (Docket Entry 1 at 16; see also Docket Entry 7 at 10-12.)  Petitioner has neither identified which witnesses his trial counsel should have presented, nor explained how the absence of those witnesses prejudiced his case. (See id.)  Subcontention 9(d) thus fails as conclusory. See Nickerson, 971 F.2d at 1136.  Moreover, Petitioner raised a parallel claim in his MAR (see Docket Entry 5-6 at 4, 7 (citing Docket Entry 5-7 at 26 (reflecting Petitioner's statement to trial court, when requesting substitution of counsel, that trial counsel had not "br[ought] in witnesses on [his] behalf" but failing to identify any specific witnesses))), and the MAR court's summary denial of that claim did not unreasonably apply or contradict clearly established federal law (see Docket Entry 1 at 38 ("Trial counsel's decision to not . . . call a particular witness is generally a matter of trial strategy and will not be second-guessed by the courts.").  See United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (concluding that "decision whether to call a defense witness is a strategic decision" and that courts "must afford [such decisions] . . . enormous deference" (internal quotation marks omitted)).

5. <u>Opening the Door to Suppressed Statements ("Subcontention</u>
   <u>9(e)")</u>

   In Subcontention 9(e), Petitioner faults his trial counsel for
"open[ing] the door to suppressed statements." (Docket Entry 1 at
16; <u>see also</u> Docket Entry 7 at 10-12.) Petitioner raised the
substance of Subcontention 9(e) on direct appeal (<u>see</u> Docket Entry
5-4 at 32-36) and in his MAR (<u>see</u> Docket Entry 5-6 at 4, 7-8
(citing Docket Entry 5-7 at 204, 208)). Before the North Carolina
Court of Appeals, Petitioner described the facts of the claim as
follows:

> The trial court ruled prior to trial that [Petitioner's]
> alleged statements to [a probation officer], made after
> he was handcuffed, violated his *Miranda* rights and could
> not be admitted as evidence against him. The statements,
> in which [Petitioner] allegedly admitted to throwing a
> gun that he owned out the window, were the strongest
> evidence of guilt where none of the officers saw
> [Petitioner] either in possession of or throwing the guns
> out the window.
>
> When cross-examining [the probation officer] at trial
> about the search of [Petitioner's] home, [trial] counsel
> questioned [the officer] about his written report of the
> incident. While reading from the report, trial counesl
> [sic] inadvertently read aloud [Petitioner's] suppressed
> statement allegedly admitting to throwing the gun out of
> the window. [Trial c]ounsel immediately realized his
> mistake, objecting when the prosecution asked [the
> probation officer] additional questions about
> [Petitioner's] statements on redirect. The objection was
> overruled, however, because [trial] counsel had opened
> the door to the suppressed statements.

(Docket Entry 5-4 at 34; <u>see also</u> Docket Entry 5-3 at 19-35
(Petitioner's Motion to Suppress), 36-38 (trial court's Order
Granting Motion to Suppress); Docket Entry 5-7 at 94-95 (recording
trial court's grant of Petitioner's motion to suppress), 204
(reflecting trial counsel's question to probation officer that

opened door to some of suppressed statements), 205-06 (containing trial counsel's overruled objections to state's questions regarding previously suppressed statements on redirect), 208 (documenting trial court's recreation of bench conference where state raised opening of door to suppressed statements).)

The North Carolina Court of Appeals denied that claim as follows:

> [Petitioner] notes that while reading from [a police] report, [trial] counsel inadvertently read aloud [Petitioner's] suppressed statement allegedly admitting to throwing the gun out of the window. But even if [Petitioner]'s attorney erred in reading the statement, [Petitioner] has failed to show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error. The evidence showed that the officers heard the window opening followed by the clink of metal, and [Petitioner] was the only individual present who could have placed the guns outside of the window. This argument is overruled.

Peques, 2018 WL 2016281, at *2 (internal quotation marks, citation, and brackets omitted).[21] The MAR court thereafter denied the claim

---

[21] Petitioner did not file a timely notice of appeal or a PDR in the North Carolina Supreme Court seeking review of the North Carolina Court of Appeals's decision (see Docket Entry 1, ¶ 9(g)), and any such claim would now face a mandatory state procedural bar, see N.C. Gen. Stat. § 15A-1419(a)(3). Thus, Subcontention 9(e) remains procedurally barred in this Court. See O'Sullivan, 526 U.S. at 847 ("requiring state prisoners to file [PDRs with the state's highest court] when that review is part of the ordinary appellate review procedure in the [s]tate" in order to exhaust post-conviction claims). Respondent, however, did not assert procedural default with regard to Subcontention 9(e) in its Brief in support of the instant Motion for Summary Judgment. (See Docket Entry 5 at 21-22.) Nevertheless, the Fourth Circuit has made clear that "a federal habeas court possesses the authority, in its discretion, to decide a petitioner's claim on the basis of procedural default despite the failure of the state to properly preserve procedural default as a defense." Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir. 1999). Here, the Court should decline to deny Subcontention 9(e) as procedurally defaulted, because Petitioner has not had an opportunity to respond to that argument with regard to Subcontention 9(e). See Hardiman v. Reynolds, 971 F.2d 500, 501-05 (10th Cir. 1992) (finding district court erred by finding petition procedurally barred where the petitioner had not yet had chance to respond).

"because, pursuant to N.C.G.S. § 15A-1419(a)(2), '[Petitioner's ineffective assistance claim premised on trial counsel's opening the door] was previously determined on the merits upon an appeal from the judgment." (Docket Entry 1 at 38.)

Here, even assuming trial counsel's inadvertent opening of the door to some of the suppressed statements constitutes deficient performance, the North Carolina Court of Appeals correctly concluded that Petitioner failed to show prejudice. The jury heard evidence that 1) Petitioner answered the door of 1302 East Commerce Avenue accompanied by two dogs when the probation officers knocked (see Docket Entry 5-7 at 186, 191), 2) Petitioner indicated he would secure his dogs and, during the time Petitioner remained in the home supposedly securing his dogs, the probation officers heard a window open followed immediately by a "clink," or metal-on-metal sound, followed by the sound of a window closing (id. at 186, 191, 212-15, 222), 3) when Petitioner returned to the door, his dogs remained with him (id.), 4) a probation officer and a police officer moments later located two fully loaded, operable firearms in the immediate proximity of the window of a bedroom where officers found nearly all of the home's furnishings and other belongings (id. at 187, 195, 212-13, 215, 218, 230, 232-33, 235-37, 242-43), 5) the officers described the guns as lying on top of leaves and other debris (id. at 233), 6) the officers found no one else in the home (id. at 194, 247), 7) the officers observed a chain-link fence in close proximity to both firearms (id. at 187, 189-90, 215-16, 218), and 8) police officers determined that the

house next door where they found one of the firearms appeared vacant and no one answered their knocks on the doors and windows (id. at 195, 215). Given this overwhelming evidence of Petitioner's guilt of possessing firearms after conviction of a felony, the Court of Appeals correctly applied Strickland in determining that Petitioner failed to show a reasonable probability that the jury would not have convicted him in the absence of his trial counsel's error in opening the door to the suppressed statements. See Tillman, 2010 WL 2731762, at *7 ("[G]iven the overwhelming evidence of [the p]etitioner's guilt, [the p]etitioner has failed to show there is a reasonable probability he would not have been convicted had [the p]etitioner not testified about the statements. Even if eliciting the suppressed statements had not been determined to be a sound trial strategy, overwhelming evidence of a defendant's guilt supports the conclusion he suffered no prejudice as a result of counsel's performance or errors.").

6. <u>Failure to Dispute Ownership of Home ("Subcontention 9(f)")</u>

Petitioner maintains, in Subcontention 9(f), that trial counsel provided deficient performance, because he "did not dispute ownership of" 1302 East Commerce Avenue. (Docket Entry 1 at 16; see also Docket Entry 7 at 10-12.) Petitioner, however, neither contests his presence at 1302 East Commerce Avenue with two dogs in the early morning hours of May 28, 2015, nor denies his ownership of the furnishings and other items in the house described by officers as belonging to him. (See Docket Entries 1, 7.) Under such circumstances, actual ownership of 1302 East Commerce Avenue

61

lacks relevance to the central issue of whether Petitioner possessed the firearms in question on May 28, 2015. Accordingly, Petitioner's trial counsel could not have provided ineffective assistance for failing to contest the ownership of 1302 East Commerce Avenue, and the MAR court's summary denial of Petitioner's parallel claim (see Docket Entry 5-6 at 4, 8; see also Docket Entry 1 at 38-39) did not unreasonably apply or contradict Strickland.

7. <u>Failure to Challenge Probation's Right to Search</u>
   <u>("Subcontention 9(g)")</u>

Petitioner next alleges that his trial counsel's performance fell short because he "did not address [p]robation's right to search or present where [Petitioner's] probation was assigned." (Docket Entry 7 at 10; see also Docket Entry 1 at 16.) A probation officer provided unrebutted testimony at trial that standard conditions of probation, including Petitioner's probation, authorize warrantless searches of a probationer's "person, [] premise, and any vehicle under [his or her] control." (Docket Entry 5-7 at 183.) As discussed above in the context of Ground Two, Petitioner has provided no competent, reliable evidence that he did not, in fact, reside at 1302 East Commerce Avenue or that probation lacked the right to search that home as a condition of Petitioner's probation. Thus, Petitioner's position that trial counsel failed him by not disputing probation's right to search the home falls short as entirely conclusory, see Nickerson, 971 F.2d at 1136, and the MAR court's summary denial of Petitioner's parallel MAR claim (see Docket Entry 5-6 at 8 (containing Petitioner's conclusory statement that he "lived with his mother[ ] which is

where [his] probation was assigned"); <u>see also</u> Docket Entry 1 at 38-39) did not unreasonably apply or contradict <u>Strickland</u>.

8.   <u>Use of Profanity and Expulsion from Office ("Subcontention 9(h)"</u>)

Via Subcontention 9(h), Petitioner contends that his trial counsel rendered ineffective assistance by "us[ing] profanity towards [Petitioner and] expell[ing] [Petitioner] from [counsel's] office." (Docket Entry 1 at 16; <u>see also</u> Docket Entry 7 at 10-12.) Petitioner raised the substance of Subcontention 9(h) in his MAR (<u>see</u> Docket Entry 5-6 at 4, 8 (citing Docket Entry 5-7 at 24-26)), and the MAR court summarily denied that claim (<u>see</u> Docket Entry 1 at 38-39).  The MAR court correctly applied <u>Strickland</u> in denying Petitioner's parallel claim.

As made clear during a hearing on pre-trial motions, when Petitioner addressed the trial court regarding his request for substitute counsel, Petitioner could articulate neither any concrete deficiencies in trial counsel's performance nor any prejudice to his case arising from the isolated incident in question with his trial counsel:

> [PETITIONER]: . . . I went to go see [trial counsel] last week and he told me to get the F out of his office, to make a long story short.  Like <u>we have no kind of preparation</u>, Your Honor, as far as my case.  There's <u>a lot of different aspects of my case that I feel like they need to be discussed</u>, you know, prepare for my trial, Your Honor, and he hasn't done any of those things.

> [TRIAL] COURT: Well, what ha[s trial counsel] not done? . . . <u>It looks like your attorney has been working hard.</u> <u>There are multiple motions, including a motion to suppress some alleged statement you made.</u>

> [PETITIONER]: Your Honor, [trial counsel] just recently did that after he told me to get the F out of his office.

[TRIAL] COURT: So, what are you asking me, [Petitioner]?

[PETITIONER]: I'm asking you, can you please appoint me another attorney that I feel like would have my best interest at heart.

[TRIAL] COURT: All right. Well, at this point, I haven't heard from [trial counsel]. Did you . . . cuss at [Petitioner], [trial counsel]? That's what he's claiming you did.

[TRIAL COUNSEL]: Well, I did tell him to leave my office.

[TRIAL] COURT: Did you use the F word?

[TRIAL COUNSEL]: I may have used some profanity. [Petitioner] was being . . . threatening basically.

[TRIAL] COURT: Well, [Petitioner], don't threaten your attorney and attorney don't use cuss words. . . . Look, just because you're having a . . . disagreement about how you're going about doing your business doesn't mean he's not ready to try your case. Tell me what he hasn't done on your case.

[PETITIONER]: All right. Your Honor, I feel as if like, you know how lawyers, they bring up different cases that's similar to your case, that; and just as far as like bringing in witnesses on my behalf, we haven't done any of that. . . . [E]very time I meet with him, he never talks about my defense. He's always just trying to get me to take a plea.
. . .

I just want to say that I don't feel as if I'm being represented to the best of [trial counsel's] ability, Your Honor. He didn't really . . . know anything about my case until I met with him like a week before we came here. Like just from me reading my motion for discovery, I felt as if I knew more about my case than he did, Your Honor. Like he didn't even know any of the officers' names . . . .

[TRIAL] COURT: [Petitioner], just because [trial counsel] wasn't as ready as you think he should have been at some point prior to today -- [trial counsel], are you ready to try the case today?

[TRIAL COUNSEL]: Yes, sir, I am.

[TRIAL] COURT: . . . [Petitioner], I've looked through the Motion to Suppress. [Trial counsel] does know the

officers' names because they're in the Motion to Suppress.  So, I understand what you're saying, but based on what I've reviewed . . . [trial counsel] has officers' names, he has detailed facts.  It appears to me from looking at the file he has prepared and worked on your case.

. . .

[F]rom what I can see, [trial counsel]'s prepared for the case, ready to go.  Because of the involved nature of the motion that he's filed, . . . it's just going to take a while. . . . [W]e're going to be working on motions your attorney has filed probably the rest of the day.  It may go into tomorrow.

(Docket Entry 5-7 at 24-29 (emphasis added).)

Petitioner's vague and generalized references to his trial counsel's alleged lack of preparation and knowledge of the case, failure to discuss unspecified aspects of the case, failure to utilize unidentified witnesses and legal precedents, and attempts to convince Petitioner to accept a plea offer do not suffice to establish deficient performance or prejudice.  As the trial court observed, Petitioner's trial counsel filed multiple pre-trial motions after the incident in question with Petitioner, and those motions reflected trial counsel's detailed knowledge of Petitioner's case.  Moreover, Petitioner rejected the state's plea offer despite any efforts by his trial counsel to persuade Petitioner to accept it.

Under these circumstances, this sub-claim provides no basis for relief.  See Schoonover v. Clarke, No. 7:18CV203, 2019 WL 4786056, at *7 (W.D. Va. Sept. 30, 2019) (unpublished) (finding the petitioner's "assertion that [his trial counsel] 'cussed' at him, even if true, d[id] not support an ineffective assistance of

counsel claim because it fail[ed] to establish either Strickland prong"); Hickman v. Davis, No. 3:15CV1979, 2017 WL 2609126, at *9 (N.D. Tex. May 15, 2017) (unpublished) (concluding that, "[e]ven if [trial] counsel yelled at [the petitioner] for not accepting the plea offer, [the p]etitioner ha[d] not shown deficiency or prejudice[ because] he entered open pleas of guilty as he wanted"), recommendation adopted, 2017 WL 2599191 (N.D. Tex. June 15, 2017) (unpublished); Soderstrom v. Lea, No. CV 08-00314, 2011 WL 7770057, at *49 (C.D. Cal. Jan. 25, 2011) (unpublished) ("Even if appellate counsel had not called [the p]etitioner rude names . . ., the result of his appeal would have been the same[ and the p]etitioner's claim therefore fails both prongs of the Strickland ineffectiveness test."), recommendation adopted, 2012 WL 1440925 (C.D. Cal. Apr. 24, 2012) (unpublished).

9.   Violation of Attorney-Client Privilege ("Subcontention 9(i)")

     Petitioner next complains that his trial counsel "violated lawyer and client confidentiality by telling what [Petitioner] wrote to [trial counsel] on a notepad." (Docket Entry 7 at 10; see also Docket Entry 1 at 16 (arguing that counsel "violated lawyer/client confidentiality").) Petitioner raised the substance of Subcontention 9(i) in his MAR (see Docket Entry 5-6 at 4, 8 (citing Docket Entry 5-7 at 397)), and the MAR court summarily denied that claim (see Docket Entry 1 at 38-39). The MAR court reasonably applied Strickland in finding neither deficient performance nor prejudice.

In connection with this sub-claim, Petitioner challenges his trial counsel's remark to the trial court during the sentencing hearing that "[Petitioner] wants me to add this because he wrote this down and wanted me to say it to begin with, was that it was a bad neighborhood." (Docket Entry 5-7 at 397 (emphasis added).) Petitioner thereafter neither denied to the trial court that he wrote the "bad neighborhood" comment down on a notepad, nor that he asked trial counsel to mention Petitioner's "bad neighborhood" during trial counsel's sentencing arguments. (See id.)[22] Petitioner's after-the-fact, self-serving assertion in Subcontention 9(i) that he did not ask his trial counsel to tell the trial court about Petitioner's bad neighborhood fails to constitute reliable, competent evidence to establish his trial counsel's deficient performance. See Cobbs v. Cartledge, No. CV 9:15-3038, 2016 WL 9019648, at *11 (D.S.C. June 16, 2016) (unpublished) (holding that "conclusory and self-serving claims are insufficient to show his counsel was ineffective," and noting that "a strong presumption [exists] that counsel's conduct . . . was within the wide range of reasonable professional assistance, and th[e c]ourt should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner" (citing Strickland, 466 U.S. at 689)), recommendation adopted, 2016 WL 9019649 (D.S.C. Oct. 11, 2016) (unpublished), appeal dismissed, 678

---

[22] Although Petitioner stated, "I didn't never [sic] say that," that denial referred to trial counsel's reference to Petitioner's previously suppressed "statement to the officer that [the firearms in question] w[ere] for protection," and not to the "bad neighborhood" comment. (Docket Entry 5-7 at 397.)

F. App'x 134 (4th Cir. 2017), <u>certiorari denied</u>, ___ U.S. ___, 138
S. Ct. 177 (2017).

Moreover, Petitioner has shown no consequences, such as waiver
of other attorney-client confidences, resulting from trial
counsel's remark to the trial court (outside the jury's presence)
regarding the "bad neighborhood" notation by Petitioner.  Thus, the
MAR court correctly concluded that Petitioner failed to establish
that this remark, offered to support a lower sentence and to rebuff
the state's assertion moments earlier that Petitioner possessed the
firearms in question for criminal reasons, prejudiced him in any
way.  The Court should deny relief on this sub-claim.

10. <u>Failure to Investigate Vacancy of Neighboring Home
    ("Subcontention 9(j)")</u>

Next, Petitioner contends that trial counsel's performance
qualified as ineffective because he "did not investigate [the]
vacancy of [the] neighboring home."  (Docket Entry 7 at 10; <u>see
also</u> Docket Entry 1 at 16 (complaining that counsel "did not
investigate").)  Petitioner also raised this claim in his MAR
(<u>see</u> Docket Entry 5-6 at 4, 8), and the MAR court's summary denial
of that claim (<u>see</u> Docket Entry 1 at 38-39) correctly applied
<u>Strickland</u>.  As detailed above concerning Ground Two, Petitioner
has presented nothing beyond a self-serving and unreliable,
eleventh-hour affidavit to support his contention that 1304 East
Commerce Avenue had occupants at the time of Petitioner's arrest.
That affidavit does not rebut the evidence presented at trial by
two of the probation officers at the scene of Petitioner's arrest
that 1304 East Commerce Avenue appeared vacant and that no one

68

answered police officers' knocks on doors and windows.  (See Docket
Entry 5-7 at 195, 215.)   Accordingly, the MAR court reasonably
applied Strickland in denying Petitioner's parallel claim.

11.  Failure to Present Mitigating Factors ("Subcontention 9(k)")

In Subcontention 9(k), Petitioner faults his trial counsel for
"not presenting mitigating factors."  (Docket Entry 1 at 16; see
also Docket Entry 7 at 10-12 (styled as failure to "present
mitigating factors besides [Petitioner's] mother being present").)
Petitioner included this claim in his MAR (see Docket Entry 5-6 at
4, 8), and the MAR court summarily denied it (see Docket Entry 1 at
38-39).  Both in Petitioner's MAR and his instant Petition, he has
utterly failed to identify a single mitigating factor that his
trial counsel should have presented, let alone argued how any such
mitigating factor would have resulted in a different outcome in his
case.  (See Docket Entries 1, 5-6, 7.)  The MAR court certainly did
not misapply or contradict Strickland in denying this conclusory
and unsupported claim.   See Nickerson, 971 F.2d at 1136
(recognizing that "[u]nsupported, conclusory allegations do not
entitle a habeas petitioner to an evidentiary hearing").

12.  Failure to Question the Credibility of the State's Witnesses
     ("Subcontention 9(l)")

As his twelfth sub-claim, Petitioner alleges his trial counsel
ineffectively failed to "question [the] credibility of [the
s]tate's witnesses."  (Docket Entry 1 at 16; see also Docket Entry
7 at 10-12.)  Petitioner included this claim in his MAR (see Docket
Entry 5-6 at 4, 8-9), and the MAR court summarily denied it (see
Docket Entry 1 at 38-39).  Again, Petitioner has neither provided

any supporting examples of counsel's failure to question the credibility of the state's witnesses, nor argued how any such omitted line of questioning would have produced a different result in his case. (See Docket Entries 1, 5-6, 7.) Moreover, the record reflects that his trial counsel cross-examined all three of the state's witnesses at trial (see Docket Entry 5-7 at 196-205, 206, 221-25, 248-54) and, among other things, compelled them to admit that they did not see any guns inside 1302 East Commerce Avenue (see id. at 203), did not observe Petitioner throw any guns out of a window (see id. at 222, 253-54), and did not find any guns on Petitioner's person (see id. at 203, 225, 253). The MAR court's ruling denying this conclusory and unsupported claim correctly applied Strickland. See Nickerson, 971 F.2d at 1136 (recognizing that "[u]nsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing").

13. <u>Inability to Answer Simple Questions ("Subcontention 9(m)")</u>

Via Subcontention 9(m), Petitioner maintains that trial counsel's performance fell short because he "was unable to answer simple questions." (Docket Entry 1 at 16; see also Docket Entry 7 at 10-12.) In his Petition and supporting materials, Petitioner fails to provide the Court with examples of any "simple questions" that his counsel could not answer and does not explain how such alleged failure prejudiced him in any way. (See Docket Entries 1, 7.) As such, Subcontention 9(m) fails as conclusory and unsupported. See Nickerson, 971 F.2d at 1136 (recognizing that

"[u]nsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing").

Furthermore, Petitioner raised that claim in his MAR (<u>see</u> Docket Entry 5-6 at 4, 9 (citing Docket Entry 5-7 at 22 (referencing trial counsel's inability to provide trial court with Petitioner's position on state's motion for joinder due to "problems communicating with [Petitioner]"))), and the MAR court summarily denied it (<u>see</u> Docket Entry 1 at 38-39). Immediately after trial counsel advised the trial court of his "problems communicating with [Petitioner]," the trial court asked counsel, "Well, do you object to the Motion [for] Joinder?" to which counsel answered, "No, I do not." (Docket Entry 5-7 at 22.) Given that the jury did not hear about Petitioner's potential status as an habitual felon during the bifurcated portion of the trial dealing with the possession of a firearm by a felon charge (<u>see</u> <u>id.</u> at 168-289), Petitioner has not shown how his trial counsel's handling of the routine matter of a motion for joinder constituted deficient performance or prejudiced him. Accordingly, through the deferential lens of 2254(d), the MAR court did not misapply <u>Strickland</u> in denying Petitioner's parallel claim.

14. <u>Failure to Object to Proceeding After Petitioner's Suicide Attempt ("Subcontention 9(n)")</u>

Petitioner contends, in Subcontention 9(n), that his trial counsel rendered ineffective assistance by "not object[ing] to proceeding after [Petitioner's] suicide attempt." (Docket Entry 1 at 16; <u>see also</u> Docket Entry 7 at 10-12.) This contention also

appears in his MAR (see Docket Entry 5-6 at 4, 9), and the MAR court denied it as follows:

> As for [Petitioner's] claim that [trial] counsel was deficient because he failed to object to proceedings after [Petitioner's] suicide attempt, the trial court found, and the [North Carolina] Court of Appeals affirmed, that "[Petitioner] had not attempted suicide but did attempt to delay this trial" by feigning multiple suicide attempts.

(Docket Entry 1 at 38.)  The MAR court's ruling should stand as correct under Section 2254(d).

As detailed above concerning Subcontention 1(c), once advised of Petitioner's alleged suicide attempt at the jail, the trial court ordered a forensic evaluation of Petitioner and held a hearing involving three witnesses to Petitioner's behavior at the jail in order to consider Petitioner's mental capacity to stand trial.  (See Docket Entry 5-3 at 47-48, 54; see also Docket Entry 5-7 at 332-67.)  At the conclusion of that hearing, the following exchange took place between the trial court and Petitioner:

> [TRIAL] COURT: [Petitioner], anything you want to say with regard to your capacity to proceed?
>
> [PETITIONER]: I'm capable.
>
> [TRIAL] COURT: All right.  Let the record reflect that [Petitioner] just said he's capable.  Thank you.

(Docket Entry 5-7 at 360 (emphasis added).)  The trial court ultimately found Petitioner competent to stand trial.  (See Docket Entry 5-3 at 49-53; see also Docket Entry 5-7 at 367.)

Given Petitioner's admission in open court that he remained mentally competent to stand trial, trial counsel could not have provided ineffective assistance by failing to object to proceeding

after Petitioner's alleged suicide attempt.  Moreover, the issue of
the sufficiency of the trial court's inquiry into Petitioner's
competency remained preserved for appeal, as the North Carolina
Court of Appeals did not consider that argument under a plain error
standard of review, i.e., the standard when trial counsel fails to
preserve a claim for appeal.  See Peques, 2018 WL 2016281, at *3-4.
Accordingly, the MAR court correctly concluded under Strickland
that Petitioner had not shown deficient performance, let alone
prejudice, with regard to his trial counsel's representation during
Petitioner's competency hearing.

15. <u>Failure to Advise Petitioner Whether or Not to Testify
    ("Subcontention 9(o)")</u>

In Petitioner's next to last ineffective assistance sub-claim,
he faults his trial counsel for failing to "give advice whether or
not to testify."  (Docket Entry 1 at 16; <u>see also</u> Docket Entry 7 at
10-11 (describing claim as failing to "give advice whether or not
to testify or help [Petitioner] understand different phases of
trial").)  Petitioner alleged that claim in his MAR (<u>see</u> Docket
Entry 5-6 at 4, 9), and the MAR court summarily denied it (<u>see</u>
Docket Entry 1 at 38-39).  As discussed above in the context of
Ground Eight, the record convincingly establishes that trial
counsel <u>did</u> advise Petitioner <u>to his full satisfaction</u> whether or
not he should testify or present evidence at trial.  (<u>See</u> Docket
Entry 5-7 at 256-61.)  Moreover, Petitioner has failed to provide
the Court with any details regarding the phases of trial his
counsel did not help him understand, and has not shown how that
alleged failure prejudiced him in any way (<u>see</u> Docket Entries 1, 5-

6, 7).  In short, Petitioner simply has not shown that the MAR court unreasonably applied <u>Strickland</u> in summarily denying Subcontention 9(o).

16. <u>Failure to Strike Juror with Potential Bias ("Subcontention 9(p)")</u>

Lastly, Petitioner asserts that trial counsel rendered deficient performance by failing to "strike [a] juror[ ] after [he or she] admitted to having a friendship with the Assistant Chief of Police and said [he or she] may 'subconciously' be bias[ed]." (Docket Entry 7 at 11; <u>see also</u> Docket Entry 1 at 16.)  Petitioner raised Subcontention 9(p) in his MAR (<u>see</u> Docket Entry 5-6 at 4, 9), and the MAR court denied it as follows:

> ". . . [D]ecisions such as . . . which jurors to accept or strike . . . are strategic and tactical decisions that are within the 'exclusive province' of the attorney." *State v. Rhue*, 150 N.C. App. 280, 290, 562 S.E.2d 72, 79 (2002).

(Docket Entry 1 at 38.)  The MAR court did not unreasonably apply or contradict Supreme Court authority in denying that claim.

As detailed in Ground Seven, although the juror in question indicated he or she might "subconsciously" have some bias due to his or her friendship with the Assistant Chief of the High Point Police Department (<u>see</u> Docket Entry 5-7 at 133), the juror responded "I think so" to the question of whether he or she could "set that [friendship] aside and just base [his or her] opinion on the evidence that's presented" (<u>id.</u> at 134).  Moreover, upon further questioning by the state, that juror indicated that he or she did not "feel like [he or she] had to vote guilty or . . . not guilty in order to make [the Assistant Chief] happy."  (<u>Id.</u>)  Thus,

despite the juror's initial concern of "subconscious" bias (id. at 133), the juror removed all doubt regarding bias when he or she responded that friendship with the Assistant Chief would not affect the juror's vote (id. at 134). Particularly given the double deference due to trial counsel's strategic choices during voir dire and arising from Section 2254(d), this sub-claim falls short. See Miller v. Francis, 269 F.3d 609, 618–19 (6th Cir. 2001) ("[V]enire members commonly couch their responses to questions concerning bias in terms of 'I think.' Therefore, the use of such language cannot necessarily be construed as equivocation."); Gambrell v. Warden of Broad River Corr. Inst., No. 2:13CV02911, 2015 WL 268790, at *19 (D.S.C. Jan. 21, 2015) (unpublished) (rejecting the petitioner's ineffective assistance claim premised on trial counsel's failure to strike a juror as biased where juror initially responded, "I think I can" to the question, "Can you be fair to both the [s]tate and the [d]efendant?" but then unequivocally stated she could remain fair); Moore v. Johnson, Civ. A. No. 7:08CV526, 2009 WL 2474101, at *11 (W.D. Va. Aug. 12, 2009) (unpublished) ("[Trial c]ounsel reasonably could have concluded . . . that taken together, [the juror]'s answers . . . [did not indicate] bias[ and, i]n the absence of proof that [the juror] was actually biased, the court must defer to [trial] counsel's strategic choices as to which venire members to strike with peremptory challenges.").

## VI. Conclusion

All of Petitioner's grounds for relief fail as a matter of law.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted, that the Petition (Docket Entry 1) be denied, and that Judgment be entered dismissing this action without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 7, 2020